78 N.J. Super. 42 (1963)
187 A.2d 374
SAMUEL SEGAL, PLAINTIFF,
v.
GREATER VALLEY TERMINAL CORPORATION, A NEW JERSEY CORPORATION, AND PARAGON OIL COMPANY, INC., A NEW YORK CORPORATION AUTHORIZED TO DO BUSINESS IN THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided January 8, 1963.
*43 Mr. Grover C. Richman, Jr., for the plaintiff (Messrs. Richman and Berry, attorneys).
Mr. Frederick P. Greiner, for the defendants (Messrs. Archer, Greiner, Hunter & Read, attorneys).
BROWN, R.C., J.C.C. (temporarily assigned).
This is a suit for possession of land and a building. It grows out of a lease of certain lands and premises located in the Township of Pennsauken, County of Camden and State of New Jersey, owned by the plaintiff and leased to the defendant, Greater Valley Terminal Corporation, on September 1, 1954, for a term of 99 years.
The matter comes before the court on cross motions for summary judgment.
The first motion is on behalf of the defendants, and the second on behalf of the plaintiff. Each seeks a judgment on the ground that there is no genuine issue as to any material fact and therefore each is entitled to a judgment as a matter of law.
The ninth paragraph of the lease is the one about which the present dispute centers, and it provides in part as follows:
"Lessee covenants and agrees that he will do none of the following things without the consent in writing of Lessor first had and obtained:

* * * * * * * *
*44 (b) Assign, mortgage or pledge this lease or under-let or sub-lease the demised premises, or any part thereof, or permit any other person, firm or corporation to occupy the demised premises, or any part thereof; * * *"
Paragraphs 14 and 15 of the lease give the plaintiff the right of re-entry in the event of a breach of the provisions of paragraph 9 above stated.
Plaintiff contends that some time after the execution of the lease, the exact date he does not know, the defendant, Greater Valley Terminal Corporation, assigned the lease to the defendant, Paragon Oil Company, Inc., in violation of the above terms. In the alternative, plaintiff alleges that the said defendant either sublet or permitted the defendant, Paragon Oil Company, Inc., to occupy the demised premises in violation of said terms.
Somewhat subsequent to the arguments on the motions, plaintiff was given leave to amend his complaint by adding the contention that the Paragon Oil Company, Inc. assigned the lease to Texaco, Inc., a Delaware corporation. This statement has not been substantiated by affidavit or other proof.
Plaintiff, by his affidavit filed herein, says that at no time has he ever authorized, either orally or in writing, the occupancy of said premises by anyone other than the defendant, Greater Valley Terminal Corporation. By a supplemental affidavit he says that the lease in question was executed in the Commonwealth of Pennsylvania and that all rental payments have been made there. The lease provides that all rents shall be paid at the office of the lessor in Philadelphia, Pennsylvania, or at such other place as the lessor may from time to time designate by notice in writing.
The defendants deny that there has been any breach of the lease, and specifically that there has been any assignment or sub-letting thereof, or any occupancy by any other person in violation of its terms.
The affidavit of defendant filed with the notice of motion states:
*45 "Paragon Oil Company, Inc. was incorporated under the laws of the State of New York on April 20, 1925, and on December 28, 1959, said corporation was authorized to do business in the State of New Jersey.
On July 26, 1960, Paragon Oil Company, Inc. owned all of the outstanding shares of each class of stock of Greater Valley Oil & Terminal Corp., a New Jersey corporation organized (as Greater Valley Terminal Corporation) under the laws of that State on July 26, 1954. Both said corporations were authorized by their respective charters to engage in similar business. On December 30, 1958, Greater Valley Terminal Corporation changed its name to Greater Valley Oil & Terminal Corp. and, on July 12, 1960, it obtained authority to do business in the State of New York. On July 26, 1960, the Board of Directors of Paragon Oil Company, Inc., at a duly constituted meeting, adopted a resolution to merge Greater Valley Oil & Terminal Corp. into Paragon Oil Company, Inc. and to assume all of the obligations of Greater Valley Oil & Terminal Corp.
On August 1, 1960, Paragon Oil Company, Inc. filed in the Department of State of the State of New York a Certificate of Ownership merging Greater Valley Oil & Terminal Corp. into Paragon Oil Company, Inc., pursuant to Section 85 of the Stock Corporation Law of the State of New York. On October 20, 1960, Paragon Oil Company, Inc., filed in the Office of the Secretary of State of New Jersey a copy of such Certificate of Ownership merging Greater Valley Oil & Terminal Corp. into Paragon Oil Company, Inc.
The lease agreement of September 1, 1954, between Samuel Segal, as lessor, and Greater Valley Terminal Corporation, as lessee, recorded in the office of the Register of Deeds of Camden County, New Jersey, in Book 2307 of Deeds, at Page 112, was never assigned to Paragon Oil Company, Inc. The premises demised under said lease agreement were never sublet to Paragon Oil Company, Inc."
Certificates of the Secretary of State of New Jersey and of the Secretary of State of New York, evidencing the corporate status of Paragon Oil Company, Inc. and of Greater Valley Oil and Terminal Corp., and the merger of Greater Valley Oil & Terminal Corp. into Paragon Oil Company, Inc., were attached to defendant's affidavit.
Although both parties state in their briefs that the facts are not in dispute, the plaintiff does contend that the parties intended to be bound by the laws of the Commonwealth of Pennsylvania and not New Jersey. This, of course, raises a factual question, but one which this court may resolve on these motions.
*46 The primary question for determination is whether or not the merger of Greater Valley into Paragon constituted an assignment of the lease and thus a violation of that provision thereof prohibiting assignment and occupation by one, other than the original tenant, without the landlord's written consent.
The court must first determine whether there is a conflict of law between New Jersey and Pennsylvania and, if so, which law governs.
"The rights of the parties under a lease, if in rem, are governed by the law of the place where the demised property is situated; but if the rights are in personam they are governed by the law of the place where the lease is made or is to be performed." 51 C.J.S. Landlord and Tenant § 231, p. 848.
I can find no substantial conflict between the laws of our State and the State of Pennsylvania. Plaintiff does cite one Pennsylvania case, Feeley v. Harwood Electric Company, 22 Luz. Leg. Reg. 314 (C.P., 1923). This decision holds that an assignment would take place upon the merger of one corporation into another under a Pennsylvania statute. This case has not been followed, however, in any other reported decision. The Pennsylvania Superior Court, dealing with the same statute four years later in 1927 in the case of Pittsburgh Terminal Coal Corporation v. Potts, 92 Pa. Super. Ct. 1, said:
"Even if it can be said in any proper sense of the word that the rights of action and property of the constituent corporations are assigned to the consolidated company resulting from the merger, such an assignment would be by operation of law. A more accurate description of the transfer would be to say that the consolidated corporation succeeds to the rights of action and property of the constituent companies."
The Pennsylvania Supreme Court in Buist's Estate, 297 Pa. 537, 147 A. 606 (1929), held that a merger of two or more corporations was neither a sale nor a liquidation of corporate property.
*47 In National Dairy Products Corporation v. Gleeson, 16 Pa. Dist. & C.O.R.2d 390 (1927), the Dauphin County (Pennsylvania) Common Pleas cites Pittsburg Terminal Coal Corporation v. Potts and Buist's Estate as authority for the rule in Pennsylvania that both in corporate mergers and corporate consolidations, transfer of assets "is by operation of law and not as the voluntary act of the parties." (at p. 400). The court quotes from the opinion of the United States Supreme Court in United States v. Seattle First National Bank, 321 U.S., 583, 64 S.Ct. 713, 88 L.Ed. 944 (1944), as follows:
"* * * We must look only to the immediate mechanism by which the transfer is made effective. If that mechanism is entirely statutory, effecting an automatic transfer without any voluntary action by the parties, then the transfer may truly be said to be `wholly by operation of law.' * * *"
Defendant claims the merger of Greater Valley into Paragon was not and could not be an assignment of the lease of September 1, 1954, or a sublease or transfer of possession of the demised premises by Greater Valley to Paragon; that Paragon is Greater Valley, and Greater Valley's estate in and possession of the demised premises is Paragon's estate and possession. Applestein v. United Board & Carton Corp., 60 N.J. Super., 333, 342 (Ch. Div. 1960). In any event, however, any assignment, sublease or transfer erroneously spelled out of the merger would have to arise by operation of law. So arising, it could not violate the lease agreement. Fleming v. Fleming Hotel Co. of New Jersey, 69 N.J. Eq. 715, 717 (Ch. 1905); Milmoe v. Sapienza, 103 N.J. Eq. 101, 106 (Ch. 1928); Siesel v. Mandeville, 140 N.J. Eq. 490, 492 (Ch. 1947). Rather obviously, the facility of corporate mergers and consolidations provided by applicable statutes would be completely thwarted if the benefit of a merging corporation's nonassignable contracts were denied to the surviving corporation.
*48 In entering the lease agreement of September 1, 1954 with Greater Valley (designated therein as "a New Jersey Corporation"), the plaintiff was fully aware that Greater Valley's shareholders could change, that it could become the wholly owned subsidiary of some other corporation, and that it could merge itself into and become part of such other corporation. Yet neither change of shareholders nor merger is mentioned in the lease agreement as a prohibited action or an event of default by the lessee. Paragon's acquisition of all of Greater Valley's stock made Greater Valley the subsidiary of Paragon, but it did not constitute an assignment to Paragon of Greater Valley's leasehold. Posner v. Air Brakes and Equipment Corp., 2 N.J. Super. 187 (Ch. Div. 1948). The merger of the subsidiary into the parent corporation strengthened but did not change the lessee's commitments under the lease agreement. Greater Valley, merging into Paragon, retained its leasehold estate and for such retention no consent of the lessor was necessary.
Had Paragon been merged into Greater Valley, would the situation actually be any different? Could plaintiff complain? I doubt it. The people occupying the demised premises in either case would be merely representatives of the corporate lessee and might well be the same. Changes of such personnel, if and when they occur, and they are certain to in 99 years, are not changes of occupancy under the law.
I agree with both parties that there is no substantial dispute as to the facts and must conclude under the law that there has been no assignment of the lease or change of occupancy in violation of its terms.
Summary judgment in favor of the defendant will be entered with costs.