ALL BRAND IMPORTERS, INC. *v.* DEPARTMENT OF
LIQUOR CONTROL ET AL.
(13651)

PETERS, C. J., HEALEY, SHEA, CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued October 3—decision released December 5, 1989

*Steven R. Humphrey,* with whom, on the brief, was *Ronald W. Zdrojeski,* for the appellant (plaintiff).

*Robert F. Vacchelli,* assistant attorney general, with whom, on the brief, were *Clarine Nardi Riddle,* attorney general, and *Richard M. Sheridan,* assistant attorney general, for the appellee (named defendant).

*Robert L. Julianelle* for the appellees (defendant Star Distributors, Inc., et al.).

ARTHUR H. HEALEY, J. The plaintiff brought an administrative appeal to the Superior Court from a declaratory ruling on May 5, 1987, by the department

of liquor control (department). That court dismissed the appeal, and this appeal ensued. We find no error.

Since 1979, A. Gallo Distributing Company (Gallo) has been the designated distributor in Fairfield county for certain beer products of the plaintiff, All Brand Importers, Inc. (All Brand), an out-of-state shipper. On December 31, 1986, Gallo merged with Star Distributors, Inc. (Star). Gallo was the terminating corporation and Star was the surviving corporation. See General Statutes §§ 33-284 (o), 33-364. The surviving corporation retained the name Star Distributors, Inc. Both Gallo and Star held wholesaler permits issued by the department, which, on the merger, required that one of the two permits be surrendered. See General Statutes § 30-62; Regs., Conn. State Agencies § 30-6-A4 (a). Gallo surrendered its wholesaler permit. By letter dated January 20, 1987, Star wrote the department requesting its advice on whether Star, as the surviving corporation, would be required to obtain reappointment letters from out-of-state shippers because of the merger. Star's letter opined, referring specifically to General Statutes § 33-369 (c),[1] that if the Connecticut statutes on merger were applicable, it would appear that such reappointments would not be necessary. The

---

[1] General Statutes § 33-369 of the Stock Corporation Act is entitled "Effect of merger or consolidation" and § 33-369 (c) provides: "The surviving or new corporation shall thereupon and thereafter, to the extent consistent with its certificate of incorporation as in effect upon effecting the merger or consolidation, possess all the rights, privileges, immunities and franchises, as well of a public as of a private nature, of each of the merging or consolidating corporations; and all property, real, personal and mixed, and all debts due on whatever account, and all other choses in action, and all and every other interest, of or belonging to or due to each of the corporations so merged or consolidated, shall be taken and transferred to and vested in such single corporation without further act or deed; and the title to any real estate, or any interest therein, vested in any of such corporations shall not revert or be in any way impaired by reason of such merger or consolidation."

department, by letter dated February 5, 1987, replied that it would "require re-appointment of manufacturers in connection with the merger of [Gallo] into [Star]." Although tending to agree that § 33-369 (c) appeared applicable, the department, citing certain statutes and a regulation, said, inter alia, that reappointment in Star's name under its permit should be obtained from all of the manufacturers and suppliers of Gallo for whom Star sought to distribute alcoholic beverages.

Thereafter, by letter dated February 20, 1987, Star wrote All Brand requesting that All Brand reappoint Star as a distributor of the All Brand lines previously distributed by Gallo. With this letter, Star enclosed copies of Gallo's "proposed" release of "all assigned distribution rights" of All Brand, a letter from Star "purporting" to accept appointment from All Brand as an exclusive distributor in Fairfield county and a request that All Brand forward a letter of the appointment of Star. All Brand refused to give an appointment letter to Star and attempted to appoint Burt's Beverage Co., Inc. (Burt's), as a distributor in Fairfield county. Star then wrote to the department on March 25, 1987, and requested a declaratory ruling as to whether, as a result of the merger, it succeeded to the distribution rights of Gallo under General Statutes § 30-17 (a) (2).

Thereafter, the department issued a "Notice of Declaratory Ruling Hearing" to decide the following question: "Whether C.G.S. Sec. 33-369 (c) automatically vests Star Distributors, Inc. with the distribution rights to All Brand products previously distributed by A. Gallo Distributing Company, which distribution rights are thereupon protected by C.G.S. Sec. 30-17 (a) (2)?" On April 9, 1987, the department held a hearing at which testimony was taken and exhibits

admitted into evidence. All Brand, Star and Burt's[2] were present at that hearing and each was represented by counsel.

On May 5, 1987, the department issued a written decision in which it ruled that "Connecticut General Statutes, Sec. 33-369 (c) automatically vests STAR DISTRIBUTORS, INC. with the distribution rights to ALL BRAND products previously distributed by A. GALLO DISTRIBUTING COMPANY, which distribution rights are thereupon protected by C.G.S. Sec. 30-17 (a) (2)." In so ruling, the department determined, inter alia, that after reviewing the Liquor Control Act (title 30 of the General Statutes), it could not find any indication that § 33-369 (c) was "modified or affected by any statute in [title 30]" and that there was no incompatability "between the corporate merger law and the Liquor Control Act." Although the department decided that a merger transfers the rights, privileges, immunities and franchises of each of the merging corporations (Gallo and Star), it emphasized that they were still required to obtain the approval of the department under its regulations. Gallo and Star had each requested prior approval of the department before the merger. Moreover, it also said that the inapplicability of § 33-369 (c) to this case would result in "adverse consequences" not only to Connecticut wholesalers but also to the department's power.

The department emphasized and developed the distinctions between a permit granted by the department and the appointment agreements that distributors have with manufacturers and out-of-state shippers. Stressing that permits and distribution rights "are both sub-

[2] By letter dated April 12, 1987, All Brand had requested that the department "approve" the appointment of Burt's as an authorized distributor of its beer lines in Fairfield county. Burt's was permitted to intervene at that time because All Brand had sought to appoint Burt's in place of Star.

ject to the pervasive regulatory control of the [department]," it pointed to our recent decision in *Schieffelin & Co.* v. *Department of Liquor Control,* 194 Conn. 165, 479 A.2d 1191 (1984), which, it opined, upheld "[t]he power to regulate virtually every aspect of the liquor and beer industry," including "permits and distributorships." Pointing out that this power has resulted in extensive legislation regulating manufacturers or out-of-state shippers, it stated that it was "apparent that *Connecticut intends to and does control the supplying out-of-state shipper . . . to make certain that the owner of the brand name, out-of-state shipper, cannot dominate or control the Connecticut wholesalers,'* " (emphasis added) citing D. Brennan, "Liquor Control," 54 Conn. B.J. 611, 613–14 (1980). Further, it found that it was immaterial whether a distribution agreement was a "franchise" under the language of § 33-369 (c) granting a surviving corporation "all the rights, privileges, immunities and franchises" of the merging corporations because, even if a distribution agreement were "found not to be a franchise per se," it would fall within the "all rights and privileges" language of that statute.

The department then turned to All Brand's argument referring to marketing plans and product mix. All Brand argued that "it does not want its product to be marketed with the other brands in the Star house" and, therefore, All Brand contends that it should have the right to terminate the appointment because of the merger. The answer to that argument, the department said, was "the use of the provisions of the 'just and sufficient cause hearing' " under § 30-17 (b). It concluded that a " 'merger' *in and of itself,* does not create 'just and sufficient cause' for termination of a distributorship." (Emphasis added.) All Brand and Burt's[3] then

_____

[3] After the appeal to the Superior Court was filed, Burt's petitioned the department to open and rehear this matter to consider the competition impact of the merger. The request was denied by the department on Octo-

appealed the department's decision to the Superior Court. The court dismissed the appeal.

The trial court found that All Brand had established aggrievement. In deciding that § 33-369 (c) applied, the trial court not only pointed out that that statute contained no exceptions or policing mechanisms, but also concluded that the merger statute and the liquor control statutes were "readily reconciled, rational and consistent." It also indicated that the effect of the merger was to lump together all of the assets and liabilities of the "constituent organizations" into the surviving corporation under § 33-369 (c), including the appointment and distribution rights of Gallo from All Brand. Just as the trial court could not engraft an exception into § 33-369 (c), as All Brand appeared to urge, the trial court stated that it could not remake the contract All Brand had entered into with Gallo. The contract was, the court said, not altered because the merger "automatically vested" all rights in Star, the surviving corporation, without any "further act or deed (such as a formal assignment)." Additionally, it rejected All Brand's claim that its 1979 appointment of Gallo as its distributor was a nonassignable personal[4] service contract which survived the merger and that All Brand was being "forced" into a contract with Star. In that regard, the trial court took pains to point out that All Brand was not without recourse as it might, in a different proceeding, challenge performance by Star in a "just and sufficient cause" hearing under § 30-17 (a) (2).

---

ber 6, 1987. Burt's appeal from that denial was dismissed on April 19, 1988. *Burt's Beverage Co.* v. *Department of Liquor Control,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV 87-0338866. There is no appeal by Burt's of the Superior Court's decision and it is no longer participating in this case.

[4] The trial court decided that the personal service contract issue was irrelevant, not because a finding of such a contract had been made but because the state of the record did not compel any recognition of such a contract. The record is barren of the terms of any written or oral agreement between the parties, including whether the contract was assignable or nonassignable.

The trial court also stressed that permits and distribution (appointment) rights were significantly different in origin and consequence, with the former being granted solely by the state and the latter being a private arrangement between the distributor and the manufacturer or out-of-state shipper, although it did recognize that distribution rights were subject to "some oversight" by the department. Further, the trial court underscored the extensive regulation of the liquor industry as it extends to out-of-state shippers and their relationship to Connecticut wholesalers. The purpose of that regulation, it indicated, is to prevent domination of the industry by out-of-state suppliers and consequently, there were limitations on such shippers' ability to end a distributorship even where, as in this case, "the precipitating act was the act of the wholesaler in merging." Observing that All Brand had to be aware of the "limiting regulatory scheme" on that industry, it noted that "special rules" for contracts within the industry were permitted within constitutional limits.

All Brand has appealed. It claims that the trial court erred in (1) its interpretation of § 33-369 (c) as applying to liquor permits, licenses and appointments, (2) its interpretation of § 33-369 (c) as applying to All Brand in that it violated its right to substantive and procedural due process including its rights under the Uniform Administrative Procedure Act (UAPA), and (3) its findings, "including but not limited to its conclusions, concerning the effect on All Brand of the merger of Gallo and Star and [its] holding [concerning] § 30-17," which was either plain error or clearly erroneous. We find no error.

An appeal from a declaratory ruling of an agency, where a hearing is held, is taken to the Superior Court pursuant to the UAPA. General Statutes §§ 4-176, 4-183. On appeal, "[i]t is not the function of the court

to retry the case." *Williams* v. *Liquor Control Commission,* 175 Conn. 409, 414, 399 A.2d 834 (1978). "[C]redibility of witnesses and the determination of issues of fact are matters within the province of the administrative agency." Id. Nor is the question "whether the trial court would have reached the same conclusion but [the question is] whether the record before the commission supports the action taken." Id.; *Conley* v. *Board of Education,* 143 Conn. 488, 492, 123 A.2d 747 (1956). " 'Judicial review of the conclusions of law reached administratively is also limited.' " *Griffin Hospital* v. *Commission on Hospitals & Health Care,* 200 Conn. 489, 496, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S. Ct. 781, 93 L. Ed. 2d 819 (1986). The court's " 'ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally or in abuse of its discretion.' " *Buckley* v. *Muzio,* 200 Conn. 1, 3, 509 A.2d 489 (1986); see *Griffin Hospital* v. *Commission on Hospitals & Health Care,* supra; *Burnham* v. *Administrator,* 184 Conn. 317, 322, 439 A.2d 1008 (1981); *Riley* v. *State Employees' Retirement Commission,* 178 Conn. 438, 441, 423 A.2d 87 (1979); *Lawrence* v. *Kozlowski,* 171 Conn. 705, 707–708, 372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S. Ct. 2930, 53 L. Ed. 2d 1066 (1977). The legal conclusions reached by the agency must stand, therefore, "if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." *New Haven* v. *Freedom of Information Commission,* 205 Conn. 767, 774, 535 A.2d 1297 (1988).

We turn now to All Brand's claim that the department erred in its interpretation of § 33-369 (c). Initially, it claims that this statute does not apply to mergers of liquor permittees. While conceding the pervasiveness of the regulatory control of the liquor industry as

well as the fact that a distributor needs a permit and an appointment before it can distribute a supplier's line, it disagrees with the department and Star on the effect of a merger in the liquor industry. It contends that the pervasiveness of regulatory control precludes the interpretation of § 33-369 (c) made by the department. Further, while maintaining that there is no dispute that Gallo "cannot transfer its permit" without department approval and that the department "must approve all appointments [of distributors] before they become effective," it argues that its appointment of Gallo as a distributor cannot be transferred by operation of law because of the merger for several reasons. The reasons advanced are: (1) the appointment by All Brand of Gallo as its distributor "ceased to exist when Gallo merged with Star"; (2) no authority was given Star by All Brand; (3) the appointment of Gallo by All Brand was "released" by Gallo when it surrendered its permit; and (4) the department never approved the appointment as it was requested to do. All Brand argues that the view of the department and Star as to the role of the department in a merger reduces the department's role "to a few perfunctory record-keeping requirements," and that that view would also render the liquor control statutes "superfluous," a result that the legislature never conceivably intended. Moreover, the concept of "automatic vesting," All Brand contends, is inconsistent with the licensing and approval procedures mandated by the statutes and regulations governing the sale and distribution of alcoholic beverages in this state and would "emasculate" the department's authority to regulate the distribution of liquor. The literal incorporation of "automatic vesting" into the liquor control statutes, it asserts, would defeat the policy of the liquor statute " 'and make its . . . provisions hopelessly inconsistent.' " We do not agree.

On this phase of the matter, the department and Star maintain, inter alia, that the plain language of § 33-369 (c) automatically vests Star with the distribution rights held by Gallo prior to the merger. They argue that neither state law nor the law of contracts operates to allow the merger to extinguish the contested distribution rights. Furthermore, they claim that All Brand's refusal to appoint Star is no bar to vesting Gallo's premerger distribution rights in Star and that their interpretation of § 33-369 (c) does not create any incompatibility between the Liquor Control Act and our corporate merger statute. They also contend that liquor distribution appointments are not exempt from the purview of § 33-369 (c) and that the automatic vesting rule of § 33-369 (c) is not inconsistent with the department's strict control of the liquor business in this state. Both the department and Star deny that there is, as claimed, any denial of All Brand's substantive and procedural due process rights or any of its rights under the UAPA. Both the department and Star emphasize that All Brand still retains its rights to seek to terminate the distribution rights of Star, as the surviving corporation in this merger, by proceeding in "a just and sufficient cause" hearing as permitted by § 30-17 (a) (2).

It is fundamental that statutory construction requires us to ascertain the intent of the legislature and to construe the statute in a manner that effectuates that intent. *Green* v. *Ward,* 178 Conn. 634, 637–38, 425 A.2d 128 (1979); *Sillman* v. *Sillman,* 168 Conn. 144, 147, 358 A.2d 150 (1975); 2A J. Sutherland, Statutory Construction (4th Ed. Sands) § 45.05. "It is well settled that a statute must be applied as its words direct." *New Haven* v. *United Illuminating Co.,* 168 Conn. 478, 485, 362 A.2d 785 (1975). Words in a statute must be given their plain and ordinary meaning and be interpreted in their natural and usual meaning unless the context indicates that a different meaning was intended. Gen-

eral Statutes § 1-1a; *Caldor, Inc.* v. *Heffernan,* 183 Conn. 566, 570, 440 A.2d 767 (1981). It is the court's duty to "interpret statutes as they are written." *Muha* v. *United Oil Co.,* 180 Conn. 720, 730, 433 A.2d 1009 (1980). " 'Courts cannot, by construction, read into statutes provisions which are not clearly stated.' " *Glastonbury Co.* v. *Gillies,* 209 Conn. 175, 179, 550 A.2d 8 (1988); *Robinson* v. *Guman,* 163 Conn. 439, 444, 311 A.2d 57 (1972). "[I]f the statutory language is clear and unambiguous, there is no room for construction." *New Haven* v. *United Illuminating Co.,* supra; *Connecticut Hospital Assn.* v. *Commission on Hospitals & Health Care,* 200 Conn. 133, 141, 509 A.2d 1050 (1986). "[T]he intent of the legislature is to be found not in what it meant to say but in what it did say." *Federal Aviation Administration* v. *Administrator,* 196 Conn. 546, 549-50, 494 A.2d 564 (1985); *Colli* v. *Real Estate Commission,* 169 Conn. 445, 452, 364 A.2d 167 (1975); *Caldor, Inc.* v. *Heffernan,* supra, 571. Where the language of the statute is clear and unambiguous, it is assumed that the words themselves express the intent of the legislature and there is no need for statutory construction or a review of the legislative history. *Federal Aviation Administration* v. *Administrator,* supra, 550.

The Connecticut Stock Corporation Act (act), which includes § 33-369 (c), became effective on January 1, 1961.[5] See Public Acts 1959, No. 618. The act defines "merger" as "the combination of one or more domestic or foreign corporations with another which continues its corporate existence. All corporations party to the merger are 'merging corporations'; the merging corporation that upon the merger continues its existence is the 'surviving corporation'; the other merging corporations are 'terminating corporations.' " General Statutes § 33-284 (o). The Connecticut statute

---

[5] The Connecticut Nonstock Corporation Act also became effective on January 1, 1961.

on the effect of merger or consolidation was based on the ABA-ALI Model Business Corporation Act (1969) § 76,[6] and certain language was also taken from North Carolina General Statutes § 55-110 (1965). S. Cross, Corporation Law in Connecticut (1972) p. 419 n.56.

All Brand claims that the merger statute does not apply to give Star, as the surviving corporation, Gallo's appointment by All Brand as a distributor. It is important to note that All Brand does not point to any other part of the Connecticut Stock Corporation Act to argue that its contention finds support in that act; the act, it emphasizes, just does not apply. We are persuaded that the act, and specifically § 33-369 (c), does apply. Section 33-283 of the act, which comprises chapter 599 of the General Statutes, is entitled "Construction of chapter" and provides in relevant part: "This chapter shall be so construed as to provide for a general corporate form for the conduct of lawful business with such variations and modifications from the form so provided as the interested parties may agree upon, subject to the interests of the state and third parties." This is language of general application providing "a general corporate form for the conduct of lawful business."[7] Certainly Gallo and Star were Connecticut corporations conducting a lawful business in this state—although they were doing so in the heavily regulated liquor industry.

---

[6] A respected commentator on Connecticut corporate law notes that while this is true, the Connecticut statute on the effect of merger and consolidation "makes a departure by its singling out liability to dissenting stockholders as being included in 'all liabilities, obligations and penalties' of a constitutional corporation which are inherited by the surviving or new corporation [referring to General Statutes §§ 33-369 (c) and 33-371 (d) (2)]." S. Cross, Corporation Law in Connecticut (1972) p. 419 n.57.

[7] There is a similar provision in the Connecticut Nonstock Corporation Act. See General Statutes § 33-420 entitled "Construction of Chapter."

All Brand does not point to any Connecticut statute that either provides or even suggests that the Stock Corporation Act in chapter 599 does not apply because the "corporate form" is employed by an entity engaged in the liquor industry. The Liquor Control Act has been part of our statutes since 1933, more than twenty-five years prior to the enactment of the Stock Corporation Act. This history offers additional support for the conclusion that the act, including § 33-369 (c), applies to the conduct of lawful business in the stock corporation form because, as we have repeatedly stated, " ' "[t]he General Assembly is always presumed to know all the existing statutes and the effect that its action or non-action will have upon any one of them. And it is always presumed to have intended that effect which its action or non-action produces." ' " *New Haven Water Co.* v. *North Branford,* 174 Conn. 556, 565, 392 A.2d 456 (1978); *Perille* v. *Raybestos-Manhattan-Europe, Inc.,* 196 Conn. 529, 540, 494 A.2d 555 (1985); *Pizzola* v. *Planning & Zoning Commission,* 167 Conn. 202, 205, 355 A.2d 21 (1974). This aid to statutory construction includes a presumption that the legislature "[has] knowledge of all existing statutes"; *Miller* v. *Eighth Utilities District,* 179 Conn. 589, 593–94, 427 A.2d 425 (1980); *Thornton Real Estate, Inc.* v. *Lobdell,* 184 Conn. 228, 230, 439 A.2d 946 (1981); and has acted with the intention of creating a consistent body of law. *Warner* v. *Leslie-Elliott Contractors, Inc.,* 194 Conn. 129, 134, 479 A.2d 231 (1984); *Thornton Real Estate, Inc.* v. *Lobdell,* supra.

Having decided that there is no reasonable basis in the statutes themselves to demonstrate that the liquor control statute and the stock corporation law were not intended to coexist, we look at All Brand's claim that, nevertheless, § 33-369 (c) has no effect on its appointment of Gallo as its distributor. We do not agree.

We have recognized the pervasiveness of the state's control over the liquor business. "Because of the danger to the public health and welfare inherent in the liquor traffic, the police power to regulate and control it runs broad and deep, much more so than the power to curb and direct ordinary business activity." *Ruppert v. Liquor Control Commission,* 138 Conn. 669, 674, 88 A.2d 388 (1952) (affirming the denial of a renewal application for an out-of-state shipper's permit); *Greenwich v. Liquor Control Commission,* 191 Conn. 528, 533, 469 A.2d 382 (1983). We have acknowledged the broader than usual power of the state over this traffic when we said: "A state has far broader power and latitude to regulate and restrict the use, distribution or consumption of liquor than the power to regulate or restrict ordinary business because of its effect on the health and welfare of the public." *Dupont v. Planning & Zoning Commission,* 156 Conn. 213, 219, 240 A.2d 899 (1968). One court, indeed, has said that "[t]he liquor business 'stands, by universal consent, in a class peculiarly within the police power.' " *Boyd v. Allen,* 246 N.C. 150, 153, 97 S.E.2d 864 (1957). While there is no inherent right to sell alcoholic beverages; *Seidenberg v. McSorleys' Old Ale House, Inc.,* 317 F. Sup. 593, 599 (S.D.N.Y. 1970); it is axiomatic that the state, in exercising its plenary power to regulate the liquor industry, nevertheless cannot trespass on a licensee's constitutional rights. *Craig v. Boren,* 429 U.S. 190, 206, 97 S. Ct. 451, 50 L. Ed. 2d 397 (1976), reh. denied, 429 U.S. 1124, 97 S. Ct. 1161, 51 L. Ed. 2d 574 (1977); see *Schwartz v. Kelly,* 140 Conn. 176, 181, 99 A.2d 89, appeal dismissed, 346 U.S. 891, 74 S. Ct. 227, 98 L. Ed. 394 (1953); *Gillhaus Beverage Co. v. Lerner,* 78 N.J. 499, 509, 397 A.2d 307 (1979). If control of this industry is to be meaningful, then not only must liquor control statutes be applied but also any statute outside that statutory scheme that permissibly effectuates such con-

trol must also be applied unless there is a clear indication to the contrary. No such contrary indication has been shown. Corporations abound in the liquor industry and they may merge.

There is no dispute that All Brand's appointment of Gallo as a distributor created a contract. The law, however, is that "statutes existing at the time a contract is made become a part of it and must be read into it just as if an express provision to that effect were inserted therein, except where the contract discloses a contrary intention." *Ciarleglio* v. *Benedict & Co.*, 127 Conn. 291, 293, 16 A.2d 593 (1940); *Hatcho Corporation* v. *Della Pietra*, 195 Conn. 18, 21, 485 A.2d 1285 (1985). There is no contrary intention disclosed in this contract. Long ago, the United States Supreme Court added emphasis to the principle that the law subsisting at the time the contract is made governs as if expressly referred to in the agreement when it held that "[t]his principle embraces alike those which affect its validity, construction, discharge, and enforcement." *Von Hoffman* v. *Quincy*, 71 U.S. (4 Wall.) 535, 550, 18 L. Ed. 403 (1866); see *Cislo* v. *Shelton*, 35 Conn. Sup. 645, 652, 405 A.2d 84 (1978). All Brand, doing business in Connecticut, is subject to this principle. Therefore, our stock corporation statute, particularly § 33-369 (c), applies to this case.

We perceive nothing incompatible in the department's control of the industry under the Liquor Control Act in combination with our stock corporation law, where applicable. Despite All Brand's claims, we are not dealing with a nonassignable personal service contract[8] on this appeal. We are concerned with a contract between two corporations, All Brand and Gallo, that has become automatically vested in Star under § 33-369 (c) because of the merger. Section 33-369 (c)

---

[8] See footnote 4, supra.

provides in part that "[u]pon the effectiveness of a merger . . . (c) The surviving or new corporation shall thereupon and thereafter . . . possess all the rights, privileges, immunities and franchises, as well of a public as of a private nature, of each of the merging . . . corporations; and all property, real, personal and mixed . . . and all other choses in action, and all and every other interest . . . of or belonging . . . to each of the corporations so merged . . . shall be taken and transferred to and vested in such single corporation without further act or deed . . . ." This language is to be construed broadly.[9] Such a construction finds support in the Model Business Corporation Act. Section 11.06 (a) (2) of the Model Act provides that when a merger takes effect, "the title to all real estate and other property owned by each corporation party to the merger is *vested* in the surviving corporation without reversion or impairment . . . . " (Emphasis added.) 3 Model Business Corporation Act Annotated (3d Ed.) pp. 1286–86.1. The annotation to this section of the act includes the following: "The language of section 11.06 (a) should be construed broadly; for example, the reference to 'all real estate and other property' in section 11.06 (a) (2) is intended to include the property referred to in all of the following clauses in section 76 of the 1969 Model Act: 'all the rights, privileges, immunities, and franchises, of a public as well as of a private nature,' and 'all property, real, personal, and mixed . . . and all other choses in action, and all and every other interest of or belonging to or due to' the corporations party to the merger." Id., pp. 1288–89. The general rule appears to be that, under merger statutes, the rights, powers, privileges and immunities of the terminating corporations pass to the surviving cor-

---

[9] "Section 11.06 (a), describing the effect of a merger, like section 76 of the 1969 Act, restates general principles of law." 3 Model Business Corporation Act Annotated (3d Ed.) p. 1288.

porations, unless there is some provision to the contrary by constitutional or statutory provision or some limitation in the charter of the surviving corporation or in the agreement of consolidation[10] or merger. See 15 W. Fletcher, Cyclopedia Corporations (Perm. Ed.) §§ 7086, 7088, 7090; 8 Z. Cavitch, Business Organizations § 166.04; 19 C.J.S., Corporations § 1628; 19 Am. Jur. 2d, Corporations § 2629. Connecticut has followed this general rule. See *Mead* v. *New York, Housatonic & Northern R. Co.,* 45 Conn. 199, 220 (1877); see also *Connecticut Children's Aid Society* v. *Connecticut Bank & Trust Co.,* 147 Conn. 554, 560, 163 A.2d 317 (1960); *Howood House, Inc.* v. *Trustees of Donations & Bequests,* 27 Conn. Sup. 176, 189, 233 A.2d 5 (1967).

The plain language of § 33-369 (c) serves to provide that All Brand's 1979 appointment of Gallo as a distributor passed to Star as the surviving corporation upon the merger. It passed to Star not by the voluntary action of the parties but by virtue of the merger under this statute. In a word, Star acquired it by operation of law. " 'Operation of law' is a generic term or phrase commonly used to express the manner in which rights (and/or liabilities) attach to a person by the 'mere application to the particular transaction of the established rules of law, without the act or cooperation' of that person. Black's Law Dictionary (4 ed)." *Pioneer National Title Ins. Co.* v. *Child, Inc.,* 401 A.2d 68, 70 (Del. 1979). "Running through all of the definitions and cases on the subject is a common thread that operation of law means the practical effect of what the law is intended to be on the subject." *American Bitumuls & Asphalt Co.* v. *United States,* 146 F. Sup. 703, 714

---

[10] "The Revised Model Business Corporation Act no longer discusses the concept of consolidation, which it considers obsolete. See the Introductory Comment to RMBCA Chapter 11. RMBCA § 11.06 now discusses the effect of a merger on the surviving and merged corporations." 19 Am. Jur. 2d, Corporations § 2629 (1989 Cum. Sup.).

(Customs Court 1956). In *United States* v. *Seattle-First National Bank,* 321 U.S. 583, 587–88, 64 S. Ct. 713, 88 L. Ed. 944 (1944), the court said: "We must look only to the immediate mechanism by which the transfer is made effective. If that mechanism is entirely statutory, effecting an automatic transfer without any voluntary action by the parties, then the transfer may truly be said to be 'wholly by operation of law.' " In *Seattle-First National Bank,* the court, construing the federal banking statute, therefore held that the transfer of securities from a state bank to a consolidated bank occurred automatically by reason of the consolidation and was, accordingly, by "operation of law." The "operation" or impact of § 33-369 (c) upon the merger in this case passed Gallo's distribution rights to Star as the surviving corporation. Nothing more was necessary because, upon merger, that right was "*taken* and *transferred* to and *vested* in [Star] . . . without further act or deed . . . ." (Emphasis added.) General Statutes § 33-369 (c). Applicable here is the normal sense of the term "vest," which indicates a present and immediate interest as distinguished from one which is contingent. 92 C.J.S. 1002.

Pursuant to the statutory command of § 33-369 (c), the merger, by operation of law, vested in Star the rights that Gallo had previously enjoyed as All Brand's distributor.[11] That appointment of Gallo did not, as All

[11] All Brand argues that the department's interpretation of General Statutes § 33-369 (c), which automatically vests Star with the distribution contract earlier given Gallo by All Brand, violates the department's own regulations that require that an appointment once made by the out-of-state shipper (or manufacturer) be accepted and then approved by the department. Maintaining that this was not done in this case, All Brand contends that this contravenes our holding in *Gianetti* v. *Norwalk Hospital,* 211 Conn. 51, 557 A.2d 1249 (1989). In *Gianetti,* the plaintiff physician had been denied reappointment to the staff of the defendant hospital. There, we said that a contractual relationship existed between the physician and the hospital because, in accepting his staff appointment, he agreed to abide by the hospital bylaws

Brand claims, cease to exist upon the merger.[12] No authority from All Brand was required, as claimed, to appoint Star as distributor because the merger statute vested Star with the distribution rights of Gallo.[13]

and they, in turn, agreed to deal with him in accordance with their bylaws. In denying the plaintiff staff reappointment, the hospital did not abide by its bylaws as required.

*Gianetti* is inapposite. Unlike the case now before us which is an administrative appeal from the action of a state agency, *Gianetti* was not an administrative appeal but one seeking the determination of contractual rights between two private parties. In addition, unlike *Gianetti,* where the two principal parties to the contract were actively litigating their respective rights and duties under the contract, in this case the department is not a party to the appointment contract between All Brand and Gallo (now Star). All Brand's invocation of *Gianetti* must recognize that the automatic vesting in Star of Gallo's distribution appointment by All Brand was brought about by the impact of § 33-369 (c) upon the merger of Gallo and Star by operation of law and not departmental action. *Gianetti* does not aid the plaintiff in this case which still has recourse under General Statutes § 30-17 (a) (2).

[12] All Brand also makes the claim that, in any event, Gallo "voluntarily released" All Brand. We do not agree. After the merger, Star contacted the department concerning Star's belief that the merger automatically transferred the distribution rights of Gallo to Star pursuant to General Statutes § 33-369 (c). The department indicated to Star that new appointment letters should be obtained in order to facilitate the protection to Star under the wholesaler distribution statute in General Statutes § 30-17 (a) (2) and that, for departmental record purposes, Star should obtain reappointments. To do this, Star communicated with All Brand that Gallo's appointment as a distributor would be released in exchange for the appointment of Star. A fair reading of the exhibits and the record would indicate that Gallo's "release" of Star was "conditional," as Star claims in its brief, in exchange for its appointment by All Brand as well as to satisfy departmental procedural requests.

[13] The Liquor Control Act requires that a person distributing liquor in Connecticut have a wholesaler's permit issued by the department. General Statutes § 30-17. The transfer of stock involved in the merger in this case was approved by the department pursuant to its regulations; Regs., Conn. State Agencies § 30-6-A4 (a); subject to the surrender of the permit of the terminating corporation, i.e., Gallo. Gallo did surrender its wholesaler permit. In the circumstances of this case, we see no problem with the automatic vesting upon merger in Star of Gallo's distribution rights under its appointment by All Brand. Under General Statutes § 33-369 (c), that Gallo appointment clearly fell within the "rights, privileges, immunities and franchises" language of that statute that automatically vested, upon merger, in Star, as the surviving corporation, "without further act or deed."

Again, it is important to remember that All Brand is not without recourse in its argument that it never selected Star as a distributor, but rather had chosen Gallo. All Brand still has the statutory right to seek to terminate a distributorship or diminish its geographic territory by prevailing in a hearing conducted by the department where it demonstrates that "just and sufficient cause exists" for doing so. General Statutes § 30-17 (a) (2). It is true that the department, in its declaratory ruling, did say "a 'merger' *in and of itself,* does not create 'just and sufficient cause' for a termination of a distributorship" and that the trial court indicated that merger did not establish "just and sufficient cause." We do not, however, understand either statement as having been intended to preclude All Brand, quite apart from the merger, from proceeding in a "just and sufficient cause" hearing under § 30-17 (a) (2). In other words, just because the merger itself was not "just and sufficient cause" under § 30-17 (a) (2), that is not to say that other circumstances might not constitute "just and sufficient cause" in favor of All Brand. We note that § 30-17 (a) (2) provides that "[f]or the purposes of this section, 'just and sufficient cause' means the existence of circumstances which, in the opinion of a reasonable person considering all of the equities of both the wholesaler and the manufacturer or out-of-state shipper warrants a termination or a diminishment of a distributorship as the case may be."

All Brand further claims that, as the result of "automatic vesting," its substantive due process rights under the fourteenth amendment have been violated. It asserts that the interpretation of § 33-369 (c), as applied to All Brand, forces it into a new contract with a distributor, i.e., Star, that it had not selected. This result, All Brand contends, is in violation of the fourteenth amendment, which protects the right to contract from "arbitrary or irrational legislative actions." We do not agree.

Long ago, in discussing business rights in an economic context, the United States Supreme Court noted that "subject only to constitutional restraint the private right must yield to the public need . . . [and] the guaranty of due process . . . demands only that law shall not be unreasonable, arbitrary or capricious, and that the means selected shall have a real and substantial relation to the object sought to be obtained." *Nebbia* v. *New York,* 291 U.S. 502, 525, 54 S. Ct. 505, 78 L. Ed. 940 (1934); see *Rybinski* v. *State Employees' Retirement Commission,* 173 Conn. 462, 472, 378 A.2d 547 (1977); *State* v. *Vachon,* 140 Conn. 478, 485, 101 A.2d 509 (1953). " 'One complaining of a due process violation [concerning the burdens and benefits of economic life must] establish that the legislature has acted in an arbitrary and irrational way.' " *Brunswick Corporation* v. *Liquor Control Commission,* 184 Conn. 75, 82, 440 A.2d 792 (1981), quoting *Duke Power Co.* v. *Carolina Environmental Study Group,* 438 U.S. 59, 84, 98 S. Ct. 2620, 57 L. Ed. 2d 595 (1978); *Usery* v. *Turner Elkhorn Mining Co.,* 428 U.S. 1, 15, 96 S. Ct. 2882, 49 L. Ed. 2d 752 (1976); *Schieffelin & Co.* v. *Department of Liquor Control,* 194 Conn. 165, 186, 479 A.2d 1191 (1984).

The twenty-first amendment to the United States constitution repealed the eighteenth amendment, which stated: "[T]he manufacture, sale, or transportation of intoxicating liquors within, the importation thereof into, or the exportation thereof from the United States and all territory subject to the jurisdiction thereof for beverage purposes is hereby prohibited." The twenty-first amendment has been interpreted to give the states "virtually complete control over whether to permit importation or sale of liquor and how to structure the liquor distribution system." *California Retail Liquor Dealers Assn.* v. *Midcal Aluminum, Inc.,* 445 U.S. 97, 110, 100 S. Ct. 937, 63 L. Ed. 2d 233 (1980); *Brunswick Corpo-*

*ration* v. *Liquor Control Commission,* supra. The twenty-first amendment does not, however, suspend constitutional guarantees and the states are not by that amendment "freed 'from all restrictions upon the police power to be found in other provisions of the Constitution . . . .' " *Brunswick Corporation* v. *Liquor Control Commission,* supra, 84. The states, of course, cannot "insulate the liquor industry from the Fourteenth Amendment's requirements of . . . due process." *California Retail Liquor Dealers Assn.* v. *Midcal Aluminum, Inc.,* supra, 108.

All Brand argues that the department's interpretation of § 33-369 (c) not only does not advance a legitimate state interest but operates, in this case, in an arbitrary manner to deprive it of a property right without due process of law. We acknowledge that All Brand's appointment contract with Gallo is a property right. All Brand, nevertheless, must acknowledge that it is also well settled that the state may, in the exercise of its powers, limit the freedom to contract where the health, safety, morals and well-being of those subject to its jurisdiction require and " 'neither the "contract" clause nor the "due process" clause has the effect of overriding the power of the state to establish all regulations that are reasonably necessary to secure the health, safety, good order, comfort, or general welfare of the community . . . and that all contract and property rights are held subject to its fair exercise.' *Atlantic Coast Line R. Co.* v. *Goldsboro,* 232 U.S. 548, 558, 34 S. Ct. 364, 58 L. Ed. 721 [1914] . . . ." *Elida, Inc.* v. *Harmor Realty Corporation,* 177 Conn. 218, 223–24, 413 A.2d 1226 (1979).

It is settled that " ' "[c]ontracts must be understood as made in reference to the possible exercise of the rightful authority of the [state], and no obligation of a contract can extend to the defeat of legitimate [state] authority." ' " *Louisville & Nashville R. Co.* v. *Mottley,*

219 U.S. 467, 482, 31 S. Ct. 265, 55 L. Ed. 297 (1911); *Elida, Inc.* v. *Harmor Realty Corporation, supra,* 224. The right of private contract "must yield to the exigencies of the public welfare when determined in an appropriate manner by the authority of the State." *Union Dry Goods Co.* v. *Georgia Public Service Corporation,* 248 U.S. 372, 377, 39 S. Ct. 117, 63 L. Ed. 2d 309 (1919); *Elida, Inc.* v. *Harmor Realty Corporation, supra.* Moreover, much of the activity in this "heavily regulated business" is conducted by corporations, domestic or foreign, and our statutes specifically provide for mergers of corporations. It is evident that the department is constantly dealing with corporations in its regulation of the industry and this invokes the law of stock corporations, including their creation, continuance and termination, as that law appears in chapter 599 of the General Statutes. The statute that governs merger of stock corporations is found in § 33-369 of that chapter and it is to that statute that the department had to turn in this case. The merger statute and the Stock Corporation Act in chapter 599 contain no exemption for stock corporations that are engaged in the liquor business. In this case the department was required to interpret and apply this statute, concededly outside the Liquor Control Act. That merger statute directly affects its regulation of the industry where the principal actors have chosen, as here, to do business in the corporate form. The department's interpretation and application of § 33-369 (c), with which we agree, was not unreasonable, arbitrary or irrational. In § 33-369 (c), the legislature has decided to permit the surviving corporation, by operation of law, to acquire the contract appointment of Gallo by All Brand as we have already pointed out. This permits the orderly flow of business in this industry where the corporate form is widely used. It does not emasculate the statutory scheme under the Liquor Control Act

as All Brand claims; the department's pervasive control, especially over whom it grants permits, enables it fully to maintain its power to regulate and carry out the legislative intent. The department's action in this matter thus had a rational basis in advancing the state's legitimate interest in controlling the industry as the legislature intended. We, therefore, conclude that All Brand's substantive due process rights were not violated as claimed.

Next, All Brand claims that its procedural due process rights were violated. In doing so, it claims that procedural due process in administrative proceedings may stem from two possible sources: the fourteenth amendment to the United States constitution or the UAPA (General Statutes § 4-166 et seq.). In this regard, it maintains that if the department correctly interpreted § 33-369 (c), then its appointment contract with Gallo became automatically vested in Star without giving All Brand any notice or opportunity to be heard. This "forced" it into a contractual relationship with Star that All Brand had never intended. We do not agree.

"For more than a century the central meaning of procedural due process has been clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.' . . . It is equally fundamental that the right to notice and an opportunity to be heard 'must be granted at a meaningful time and in a meaningful manner.' *Armstrong* v. *Manzo,* 380 U.S. 545, 552 [85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965)]." (Citations omitted.) *Fuentes* v. *Shevin,* 407 U.S. 67, 80, 92 S. Ct. 1983, 32 L. Ed. 2d 556, reh. denied, 409 U.S. 902, 93 S. Ct. 177, 180, 34 L. Ed. 2d 165 (1972). " ' " 'Due process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." ' . . . Instead, due process is a flexi-

ble principle that 'calls for such procedural protections as the particular situation demands.' " (Citation omitted.) *Lee* v. *Board of Education,* 181 Conn. 69, 73, 434 A.2d 333 (1980); *Mathews* v. *Eldridge,* 424 U.S. 319, 334, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). It is settled that to be entitled to notice and hearing, a person must have suffered by state action a loss of either a property or liberty interest. *Arnett* v. *Kennedy,* 416 U.S. 134, 164, 94 S. Ct. 1633, 40 L. Ed. 2d 15 (1974) (Powell, J., concurring).[14]

All Brand claims that its interest in its appointment contract with its distributor constitutes a property right that is protected by the fourteenth amendment. It cannot be overlooked, however, that "[p]rocedural due process is not invoked by every government action affecting private interests." *Cervoni* v. *Secretary of Health, Education & Welfare,* 581 F.2d 1010, 1017 (1st Cir. 1978). In the circumstances of this case, All Brand has not proven that its appointment contract with Gallo, although a property right, is such as to invoke the procedural due process protections of the fourteenth amendment. Our reasoning above finding no constitutional infringement of All Brand's right to contract applies equally here. In addition, as noted earlier, the United States Supreme Court has recognized that "[t]he Twenty-first Amendment grants the States virtually complete control over whether to permit importation or sale of liquor and how to structure the liquor distribution system." *California Retail Liquor Dealers Assn.* v. *Midcal Aluminum, Inc.,* supra, 110. Mergers are common on today's business landscape. Interestingly, in *CTS Corporation* v. *Dynamics Corporation of America,* 481 U.S. 69, 91, 107 S. Ct. 1637, 95 L. Ed. 2d 67 (1987), Justice Powell used the law of mergers as a paradigm of traditional state regulation of cor-

---

[14] We will assume, arguendo, that the requisite state action is present in this case.

porate governance, observing that a "[s]tate has an interest . . . among parties involved in the corporations it charters . . . ." *RP Acquisitions Corporation* v. *Staley Continental, Inc.,* 686 F. Sup. 476, 487 (D. Del. 1988). All Brand had no cognizable federal due process right to expect to be free from the operation and effect of our merger laws. See *Segal* v. *Greater Valley Terminal Corporation,* 78 N.J. Super. 42, 187 A.2d 374 (1963), aff'd, 83 N.J. Super. 120, 199 A.2d 48 (1964). It has even been said: "Of course, the state, in the reasonable exercise of its police power, may frustrate even expectations that rise to the level of a property interest. See *Prune Yard Shopping Center* v. *Robins,* 447 U.S. 74, 82, 100 S. Ct. 2035, 2041, 64 L. Ed. 2d 741 (1980) . . . ." *Family Division Trial Lawyers* v. *Moultrie,* 725 F.2d 695,706 n.13 (D.C. Cir. 1984); see *Schieffelin* v. *Department of Liquor Control,* supra, 181–82.

The liquor control department, operating as it does on corporations as well as individuals, was called upon, in this case, to review and approve or disapprove a stock transfer in the proposed merger between Gallo and Star. This obviously invoked the impact of our merger statute. It did this in a context where the department had the authority to review the stock transfer proposed and approve or disapprove the merger. See Regs., Conn. State Agencies § 30-6-A4 (a). No hearing was necessary on the merger itself and none was had, although a hearing seeking a declaratory ruling was later held on April 9, 1987. All Brand could not harbor any reasonable expectation to be free from mergers in this industry. One court has said: "Rather obviously, the facility of corporate mergers . . . provided by applicable statutes would be completely thwarted if the benefit of a merging corporation's . . . contracts were denied to the surviving corporation." *Segal* v. *Greater Valley Terminal Corporation,* supra,

47. It is fair to say that the liquor control laws are to be enforced for the benefit of the public and not for the economic benefit of the plaintiff. See *Schieffelin* v. *Department of Liquor Control*, supra, 182–86; *Hartford Distributors, Inc.* v. *Liquor Control Commission*, 177 Conn. 616, 621–22, 419 A.2d 346 (1979). All Brand was not denied procedural due process.

In addition, All Brand was not deprived of any procedural due process rights under the UAPA. On this branch of the claim, All Brand argues that when the department "approved" Star as an All Brand appointee it acted on a "license," as that is defined under the UAPA, General Statutes § 4-166, and, therefore, if the department correctly interpreted § 33-369 (c), All Brand was entitled to notice of the pending merger and an opportunity to be heard prior to the approval of the merger. The result of the merger, it goes on, was that its appointee and distribution network in Fairfield county were changed, its contract rights were accordingly affected and, therefore, it was entitled to notice of and a hearing on the proposed merger. It maintains that the rules for "contested cases" under the UAPA apply to the hearing to which it alleges that it is entitled. We do not agree.

The provisions of the UAPA apply to the department of liquor control as it is an "agency" within the meaning of that term under the UAPA statute. General Statutes § 4-166 (1).[15] An "agency" is defined for the purposes of the UAPA as "each state board, commission, department or officer . . . authorized by law to make regulations or to determine contested cases . . . ." General Statutes § 4-166 (1). The UAPA requires that, in a "contested case, all parties shall be

---

[15] The Uniform Administrative Procedure Act applies to all agency proceedings not expressly exempted. General Statutes § 4-185. The department of liquor control is not expressly exempted.

afforded an opportunity for hearing after reasonable notice." General Statutes § 4-177 (a). The UAPA provides that a " '[c]ontested case' means a proceeding, including but not restricted to rate-making, price fixing and licensing, in which the legal rights, duties or privileges of a party are required by statute to be determined by an agency after an opportunity for hearing or in which a hearing is in fact held . . . . " General Statutes § 4-166 (2); *Herman* v. *Division of Special Revenue*, 193 Conn. 379, 382, 477 A.2d 119 (1984); *Rybinski* v. *State Employees' Retirement Commission*, supra, 472–73.

To qualify a proceeding as a "contested case" under § 4-166 (2) and, thus, to be entitled to a "hearing," a party must have a statutory or regulatory right to be heard by the agency. *Herman* v. *Division of Special Revenue*, supra, 383. There is no requirement that the department hold a hearing prior to a merger. All Brand had no statutory or regulatory right to a hearing prior to the merger as the proceeding was not a "contested case" under the UAPA. This is so despite All Brand's argument that a "hearing" was required because the department acted on a "license" as defined in § 4-166 of the UAPA.

In advancing its "license" claim, as the predicate to being entitled to a "hearing," All Brand specifically refers first to § 4-182 of the UAPA, which is entitled "Matters involving licenses."[16] That section provides in part that "[w]hen the grant, denial or renewal of a license is required to be preceded by notice and oppor-

---

[16] General Statutes § 4-182 provides: "(a) When the grant, denial or renewal of a license is required to be preceded by notice and opportunity for hearing, the provisions of this chapter concerning contested cases apply.

"(b) When a licensee has made timely and sufficient application for the renewal of a license or a new license with reference to any activity of a continuing nature, the existing license shall not expire until the applica-

tunity for hearing, the provisions [of the UAPA] concerning contested cases apply." General Statutes § 4-182 (a). All Brand then turns to § 4-166 (3), which provides that the term "license" includes "the whole or part of any agency permit, certificate, approval, registration, charter, or similar form of permission required by law . . . ." Then, referring to General Statutes § 30-63 and the term "approval" in § 4-166 (3), it contends that because "[a]ll appointments [of wholesale distributors] must be approved by the [department]," such appointments are "licenses" and therefore a "hearing" is required.

An examination of § 30-63,[17] however, discloses that it provides in relevant part: "(a) No holder of any manufacturer, wholesaler or out-of-state shipper's permit shall ship, transport or deliver within this state,

---

tion has been finally determined by the agency, and, in case the application is denied or the terms of the new license limited, until the last day for seeking review of the agency order or a later date fixed by order of the reviewing court.

"(c) No revocation, suspension, annulment or withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency gave notice by mail to the licensee of facts or conduct which warrant the intended action, and the licensee was given an opportunity to show compliance with all lawful requirements for the retention of the license. If the agency finds that public health, safety or welfare imperatively requires emergency action, and incorporates a finding to that effect in its order, summary suspension of a license may be ordered pending proceedings for revocation or other action. These proceedings shall be promptly instituted and determined."

[17] General Statutes § 30-63 (a) provides: "REGISTRATION OF BRANDS, FEES. POSTING AND NOTICE OF PRICES. (a) No holder of any manufacturer, wholesaler or out-of-state shipper's permit shall ship, transport or deliver within this state, or sell or offer for sale, any alcoholic liquors unless the name of the brand, trade name or other distinctive characteristic by which such alcoholic liquors are bought and sold, the name and address of the manufacturer thereof and the name and address of each wholesaler permittee who is authorized by the manufacturer or his authorized representative to sell such alcoholic liquors are registered with the department of liquor control and until such brand, trade name or other distinctive characteristic has been approved by the department. Such registration shall be

or sell or offer for sale, any alcoholic liquors unless . . . the name and address of each wholesaler permittee who is authorized by the manufacturer or his authorized representative to sell such alcoholic liquors are *registered* with the department of liquor control and until such brand, trade name or other distinctive characteristic has been *approved* by the department. . . . '' (Emphasis added.) This section requires, inter alia, that, in order to "ship, transport or deliver [alcoholic liquors] within this state" a manufacturer or out-of-state shipper must authorize a wholesale permittee in Connecticut to sell the liquor it is shipping, transporting or delivering. This section further requires that the names and addresses of these wholesale permittees be "registered" with the department; other matters such as brands, trade names, etc., have to be "approved" by the department. There is no requirement that appointment of a Connecticut wholesaler, designated as a distributor by a manufacturer or an out-of-state shipper, must be "approved" by the department as All Brand claims. The appointment of a Connecticut wholesaler as a distributor is not the subject of an "agency permit, certificate, approval, registration" issued by the department; it is a private contractual arrangement between the manufacturer or out-of-state shipper and a Connecticut wholesaler. The department, we were told at oral argument, apparently has very little to do with the creation of that relationship in a given case except to document it, although later it will enforce whatever rights flow from it under the applicable law. That contractual relationship, as we have demonstrated, is subject to the impact upon it of

valid for a period of three years. The fee for such registration, or renewal thereof, shall be one hundred dollars for out-of-state shippers and three dollars for Connecticut manufacturers for each brand so registered, payable by the manufacturer or his authorized representative when such liquors are manufactured in the United States and by the importer when such liquors are imported into the United States.''

Connecticut law which in this case is found not only in the Liquor Control Act[18] but also in our stock corporation statutory scheme. This arrangement between a manufacturer or out-of-state shipper and a Connecticut wholesaler does not involve a "license" under §§ 4-166 (4) and 4-182 as claimed. All Brand's permit from the department to operate as an out-of-state shipper (or manufacturer) was not the focus of any "grant, denial or renewal" under § 4-182 (a) and, therefore, the provisions of the UAPA concerning contested cases did not apply. None of All Brand's rights under the UAPA was violated. All Brand is not without recourse. It still may seek the "just and sufficient cause" hearing provided under § 30-17 (a) (2) to seek the termination or diminution of Star's distributorship; that method is "a legitimate method of structuring the state's liquor distribution system" and "[a]dditionally, it serves the equally important purpose of preventing out-of-state shippers from dominating Connecticut wholesalers." *Schieffelin & Co.* v. *Department of Liquor Control,* supra, 183.

Finally, invoking "plain error" under Practice Book § 4185, All Brand contends that if the interpretation of § 33-369 (c) by the department and the trial court is correct, then "[s]ection 33-369 would be rendered unconstitutional" because of the "anti-competitive effects of such an interpretation." In doing so, All

---

[18] The extensive regulation of the liquor industry has extended to manufacturers and out-of-state shippers. In *Schieffelin & Co.* v. *Department of Liquor Control,* 194 Conn. 165, 180–81, 479 A.2d 1191 (1984), we said: "A manufacturer or out-of-state shipper is required to obtain a permit; General Statutes §§ 30-16, 30-18, 30-19; to register its products brand names and its authorized wholesale distributors; General Statutes § 30-63; to list the prices at which it will sell its products to the Connecticut wholesalers in the succeeding month; General Statutes § 30-63 (c); and to certify that the product is not being sold at a lower price in any other state. General Statutes § 30-63a. In addition, there are provisions precluding rebates, free goods and tie-in sales. General Statutes § 30-94."

Brand invokes a statement in Burt's trial brief that that interpretation suggests an antitrust violation of section 7 of the Clayton Act. See 15 U.S.C. § 12 et seq. Both the department and Star oppose this argument and we agree with them.

There are a number of reasons justifying rejection of this argument. These include: It was not advanced during the declaratory ruling held by the department; there are no facts in the record respecting the impact of the department's ruling on competition; the department did not rule on that matter; and the appeal filed in the Superior Court in this case does not allege an antitrust ground as a basis for reversal of the department's decision. Moreover, to the extent that All Brand is here advancing this argument as a means for an enforcement action under § 7 of the Clayton Act, it would appear that there is a lack of jurisdiction. State courts do not have jurisdiction over federal antitrust claims as they are within the exclusive jurisdiction of the federal courts. *Marrese* v. *American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 379–80, 105 S. Ct. 1327, 84 L. Ed. 2d 274 (1985).

There is no error.

In this opinion the other justices concurred.