[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Mable Mason, appeals from a final decision of a fair hearing officer of the defendant, Department of Social Services ("the department") pursuant to General Statutes §§ 4-166 et seq. and 4-183
of the Uniform Administrative Procedure Act ("UAPA"). The department, acting pursuant to General Statutes §§ 17b-733 and 17b-749 and the regulations promulgated thereunder, denied the plaintiff's child day care subsidy. The department is designated pursuant to General Statutes §17b-733 as the lead agency for child day care services and programs in Connecticut.
The following facts are relevant to this appeal. The plaintiff is the grandmother and legal guardian of three minor children, Ja'quell, Jayvon and Shawanda ("children"). (Return of Record ("ROR"), Volume I, Notice of Decision, p. 3.) In addition to the plaintiff and the minor children, also residing in the home is Nelson Mason, the plaintiff's spouse and the biological grandfather of the children. (ROR, Volume I, Notice of Final Decision, p. 5.) The plaintiff is employed on the third shift at United Technologies in East Hartford. (ROR, Volume I, Notice of Final Decision, p. 6.) Nelson Mason works five days per week at Ansonia Copper Brass during the second shift. (ROR, Volume I, Notice of Final Decision, p. 6.)
In August 1997, the plaintiff and the department were involved in litigation over the discontinuance of benefits under the department's work related child care program. While this matter was pending in Superior Court, the department found Mason eligible for benefits under the child care certificate program ("CCC benefits") pursuant to General Statutes § 17b-749, effective August, 1998. On the department's motion, the Superior Court, Holzberg, J., remanded the plaintiff's case CT Page 6267 to the department for hearing on retroactive benefits.[1] In addition, at the time that the department found the plaintiff eligible for CCC benefits, the department also limited eligibility to those times when neither Nelson Mason nor the plaintiff were home with the children because of work or travel to and from work. (ROR, Volume I, Notice of Final Decision, p. 10.) This restriction on the grant of CCC benefits to the plaintiff was addressed at the hearing on December 15, 1998.
At the December 15, 1998 hearing, the plaintiff appeared without legal representation. At the hearing, the plaintiff testified that Nelson Mason did not participate in the decision to care for the minor grandchildren and that Nelson Mason wanted no responsibility with respect to children, especially caring for them at night. (ROR, Volume II, Transcript, p. 13.) The only medical information received during the hearing with respect to Nelson Mason's health was that he had had a quadruple bypass heart operation in 1987. (ROR, Volume II, Transcript, p 11.) The plaintiff stated that Nelson Mason did not routinely visit his doctor and it was difficult for her to obtain his medical information. (ROR, Volume II, Transcript, pp. 12, 13.) The hearing officer left the hearing open for one month for further medical information to be submitted, but no further information was supplied. (ROR, Volume I, Notice of Decision, p. 10; ROR, Volume I, Letter to Appellant, p. 97.) On February 25, 1999, the department's hearing officer concluded that since Nelson Mason was at home during the hours for which the plaintiff sought CCC benefits, the plaintiff was entitled to payment for one hour a day on those days when both Nelson Mason and the plaintiff were working. (ROR, Volume I, Notice of Decision, p. 11.)
On March 11, 1999, Law Student Intern Eve Stotland and Attorney Kathleen Sullivan, now representing the plaintiff, wrote to the director of administrative hearings a the department, enclosing a letter from Dr. Vin Prabhat, a physician specializing in ear, nose and throat difficulties, stating that he was caring for Nelson Mason. Dr. Prabhat related that Nelson Mason was suffering from "pen-orbital cellulitis," an inflamation of the eye socket. The condition had resulted from a "mucocele" and a "papilloma" types of benign tumors near the eye. An operation[2] had occurred on February 25, 1999 to remedy the condition and Nelson Mason was recuperating for the next month and therefore, unable to take care of the grandchildren. The plaintiff requested reconsideration of the hearing officer's decision. On April 6, 1999, the department denied the request because Dr. Prabhat's letter related to post-hearing medical disabilities and not to medical problems in existence at the time of the hearing. (Supplemental Return of Record, Item SR-2, Reconsideration Denial, p. 4.) The plaintiff has now appealed from the February 25, 1999 decision. The court finds that Mason has shown the aggrievement required for an administrative appeal. CT Page 6268
The hearing officer made two interrelated conclusions to determine that the plaintiff was only partially eligible for the CCC benefits. First, the hearing officer concluded that Nelson Mason and the plaintiff were "parents" because they acted "in loco parentis" under §8-210b-9a of the Regulations of Connecticut State Agencies. She then explained that pursuant to the department's regulations the children were eligible for CCC benefits for no more than one hour, five days a week. The hearing officer found that § 8-210b-10a(c)(1) of the Regulations of Connecticut State Agencies had been satisfied in that the children were under age thirteen and that § 8-210b-10a(c)(2) of the Regulations of Connecticut State Agencies had been met because child care was necessary during specific hours to allow the "parents" to work. Section 8-210b-10a(c)(3) of the Regulations of Connecticut State Agencies, however, required that the parent's "spouse" care for the child unless he or she had a documented disability. Since the plaintiff had not provided any medical excuse for Nelson Mason, under the above regulation, he was available to care for the children during the hours Mason worked, except for one hour a day.
The first argument made by the plaintiff in opposition to the hearing officer's decision is that the hearing officer erred in concluding that Nelson Mason stood "in loco parentis." The plaintiff has support in the record for this assertion, and the court agrees that Nelson Mason does not have a guardianship relation with the children. The error of the hearing officer, if any, is harmless however. As the department notes in its brief, the hearing officer based her decision upon § 8-210b-10a(c)(3) of the Regulations of Connecticut State Agencies, finding that the plaintiffs-guardian's husband was available to care for the children overnight. (Brief of the Defendant, p. 9.) This finding did not depend on whether Nelson Mason was a "parent" or acting "in loco parentis." The hearing officer properly reed the regulation to require Nelson Mason to care for the children, by virtue of his being a spouse, regardless of his relationship to the children, unless he were disabled.All Brand Importers, Inc. v. Department of Liquor Control, 213 Conn. 184,192-93 (1989) (correct interpretation of regulation).
Further, the hearing officer's interpretation of the regulation imposing the duty of care on Nelson Mason, a disinterested party without the duty of support, is said to violate federal and state law. The court agrees, however, with the department that federal regulations applicable to the CCC program allow for imposing such a restriction on the program. The state is specifically allowed to impose additional non-discriminatory eligibility conditions on those seeking CCC services.45 C.F.R. § 98.20 (b). CT Page 6269
The obligation of a spouse to provide day care, if healthy, is not analogous to imposing the obligation of support on a guardian. The case relied upon by the plaintiff, Favrow v. Vargas, 231 Conn. 1 (1994), dealt only with imposing the "legal obligation of support" on one who was acting as a guardian. Id., 21. That case is not applicable to the plaintiff's situation.
The plaintiff claims that imposing overnight care of the children on her spouse creates a wrongful and irrebuttable presumption. In the area of distribution of social insurance benefits, however, such presumptions have been routinely approved. See Weinberger v. Salfi, 422 U.S. 749, 784
(1975) (duration of marriage relationship). This is not the situation inKing v. Smith, 392 U.S. 309 (1968), where the presence in the home of an unmarried man in and of itself led to disqualification. Here, the disqualification is validly based upon resources available. As noted inDandridge v. Williams, 397 U.S. 471, 487 (1970), the states have the "difficult responsibility of allocating limited public welfare funds among the myriad of potential recipients."
The hearing officer concluded under the department's regulation that the plaintiff had made no showing that Nelson Mason was disabled. There is substantial evidence to support this conclusion. Altschul v. Salinas,53 Conn. App. 391, 397 (1999) (court reviews agency decision for substantial evidence). In the supplemental record, there is information on Nelson Mason's health as of February, 1999. Clearly, as noted in the letter denying reconsideration, most of this information supplied by the plaintiff's new attorneys applied to a time period after the hearing of December 15, 1998. Since Dr. Prabhat was caring for Nelson Mason in this time period for cellulitis, and the tumors existed, there is a possibility that at the time of the hearing, or one month after, Nelson Mason had a disability. Accordingly, the case should be remanded solely to clarify the dates of care of Nelson Mason with regard to his eye problems and whether he was disabled due to the eye problems prior to January 15, 1999.
The plaintiff's appeal is hereby sustained and the case is remanded for further proceedings at the department in accordance with this decision.
Henry S. Cohn, Judge