UTICA,<br>Aug. 1826.<br>~~~~~<br>The People<br>v.<br>Dean.

---

## THE PEOPLE *against* DEAN.

THE defendant was convicted at the last oyer and terminer of *Washington* county, of forging a promissory note for the payment of money, purporting to be signed by *Solomon Dean*, payable to *Gerrit Wendell*, or order, at the bank of *Lansingburgh*, with intent to defraud *Wendell*. On the trial, *Solomon Dean* was offered as a witness for the people ; but he admitting that he had not paid the note, was objected to by the defendant's counsel as incompetent. The objection was overruled by the judges, and he was sworn and testified in the cause.

Judgment was suspended in the court below, for the purpose of taking the opinion of this court upon the above point ; and the record removed here by certiorari, accompanied with a case presenting the point.

The prisoner now being brought up by *habeas corpus*,

*S. Stevens*, his counsel, said it was well settled by an unbroken series of English decisions, both before and since the revolution, that the person whose name had been forged to a contract, cannot be a witness, on the trial of an indictment, to prove the forgery. (*Hardr.* 331. 3 *Salk.* 172. 2 *Str.* 728. 1 *Leach*, 8, 155, 214. 2 *East's P. C.* 993 to 995. 5 *B. & P.* 87. 2 *East's P. C.* 996. *Robert Rhode's case*, 1 *Leach*, 31. *M'Nally's Ev.* 141. 143.)

A witness<br>whose name<br>has been forged, is a competent witness,<br>on the trial of<br>an indictment,<br>to prove the<br>forgery.

*Chitty* and *Phillips* lay down the same doctrine. The same thing was held by this court in 1794. The decision is mentioned by *Kent*, Ch. J. in *The People* v. *Howell*, (4 *John. Rep.* 296, 302.) The chief justice there questions the soundness of the rule; but declares there was no necessity for interfering with it in that case; and that the court did not interfere with it.

I am aware that the rule has been questioned, and indeed overruled in other states; but those decisions are not binding here. The question with us should be, what is the common law of *England*? Our constitution has expressly adopted that law. It is as binding upon the court as if the legislature had passed an act declaring that the English rule in this particular case should be our rule. The highest evidence of the common law is the English cases.

I know the reason of the rule may be questioned. English judges themselves have admitted it to be an anomaly in the law of evidence; but it is enough for us in a criminal case to show what the rule is. It must continue till altered by the legislature.

Nor is it entirely destitute of reason. Suppose a trial of an indictment for the forgery of the maker's name to a note, which is believed by all the witnesses, except the maker, to be genuine. He is then called. If he admits its genuineness, what he says would be evidence against him, on a private suit for the money. In this view, he would be interested to deny his signature, in order to escape the effect of swearing true. It is well, where crimes of this high nature are in question, to avoid even a temptation to perjury against the criminal.

*Talcott*, (A. G.) contra. There was a time when the rules of evidence were so strict that the person sought to be injured either by usury, perjury or forgery, was an incompetent witness to prove the crime. This arose from confounding an interest in the question, with an interest in the event of the cause. The cases of *Bent* v. *Baker*, (3 *T. R.* 27,) and *Abrahams* v. *Bunn*, (4 *Burr.* 2251,) placed the doctrine of interest on its true footing; and since

that time, to exclude a witness for this cause, he must be interested in the event of the suit. In general, to exclude him, it must appear that the record in the suit wherein he is called to testify, will be evidence for or against him; otherwise he neither gains nor loses any thing by the event. After this rule was established, it was, as remarked by the prisoner's counsel, agreed by English judges, that the doctrine which he contends for was an anomaly, not justified by principle; yet it was obstinately adhered to. But if all the cases except those relating to the point before the court, have been made to square with the more enlightened rule; if all cases to the contrary, except those now in question, have been overruled, (see 4 *Burr.* 2251, 4 *East*, 572,) why not overrule these also? Such a step is justified by the same reasons upon which the other cases were disregarded, and considered no longer binding.

There may be one reason for the exception in *England* which has no existence here. In many cases, the instrument forged, is forfeited to the crown; the party who would otherwise be benefitted by it loses all interest; nor can the crown sue upon it, because the very record through which it must derive its interest shows the forgery. In all other cases the instrument is impounded by the court; and the party cannot reach it. (2 *East's P. C.* 994.) *Evans* remarks, in his commentary on *Pothier*, "I have heard a learned judge assign a reason for not admitting a person whose name is forged to an instrument, purporting to subject him to an obligation, viz. that though the crown acquires a right, by forfeiture, to the goods of the offender, it may not be allowed to set up such a right in respect of the particular obligation, which, by the same record that is necessary to the title, is found to be a forgery." (2 *Ev. Poth.* 316.) In *Commonwealth* v. *Snell*, (3 *Mass. Rep.* 82,) the English cases have been overruled. *Parsons*, C. J. said in that case, that "formerly, both in civil and criminal prosecutions, the witness was held to be incompetent, if he was interested in the question; that in *England*, since Lord Chief Justice *Parker's* time, the rule

UTICA, Aug. 1826. The People v. Dean.

had been altered; and no witness was now excluded from testifying by reason of any supposed interest, unless he was interested in the event of the suit, or unless the verdict in the cause, whichever way it may be found, could be given in evidence in any other action, in which he was a party; that in *England*, the party whose name is said to be forged cannot now be a witness; for he is considered as interested; because, if the instrument is found by the verdict to be a forgery, it is impounded by the court; so that it cannot again be used as evidence." (*id.* 84.) The courts in *Pennsylvania* hold the same doctrine. (*Respublica* v. *Ross*, 2 *Dall.* 239.)

True, in 1794, this court did hold with the English cases; but that decision was afterwards questioned by *Kent*, C. J. in *The People* v. *Howell*, (4 *John. Rep.* 302;) and the courts of oyer and terminer have since been in the uniform practice, I understand, of admitting the witness whose name has been forged.

[WOODWORTH, J.    I have known this to be so in several cases at the oyer and terminer; and its propriety was not drawn in question.]

As to the temptation to perjury from fear that an admission of the hand writing may be given in evidence against the witness in a private prosecution; the argument proves too much.   It would go to render witnesses incompetent in thousands of cases, where their competency was never thought of being questioned.

So far as the true principles of evidence are in question, there is no doubt.    That principle is sanctioned by many cases, and indeed is not denied; and it will be always found that one good principle is worth a hundred precedents.  The court are called on, not to overrule, but return to the law.    I should be sorry to suppose there is any thing either in the constitution or common law, which will prevent their doing so.

*Stevens*, in reply, said he was not aware that in *England* the forged instrument was ever considered as forfeited to the king.    He did not believe that it came within the doc-

trine of deodands. If this be so, why did the learned men of that country agree in styling the doctrine for which he contended an anomaly ? In truth, if this were as contended by the attorney general, the witness would have the highest interest. To impound the instrument was also a very ancient practice ; and has not prevailed in *England* for many years. The question has been considered entirely unembarrassed with either of these difficulties. The reason of the rule is the same on both sides of the Atlantic.

*Curia*, per SAVAGE, Ch. Justice. There has been a difference upon the point presented by this case between the English and American decisions ; the former holding that the party whose name has been forged to an instrument, cannot be a witness against the offender ; and the latter that he may. Although this court, in 1794, decided according to the English cases ; yet the reasoning of *Kent*, Ch. J. in *The People* v. *Howell*, has generally been considered by the profession as satisfactory ; and it has, as far as we can learn, been followed in practice, at the courts of oyer and terminer. Besides, if we pass from the conflict of decision and practice on the subject, we find a principle long and well established, and so fully embracing the point, that the English judges, when this question has come before them, acknowledge their own course to be a mere anomaly in the law of evidence. (4 *East*, 582.) That principle is, that whenever the witness cannot possibly derive any benefit or sustain any loss from the event of the cause, he is competent. To this rule, even in *England*, the point in question forms a solitary exception, for which no reason can be given. (*Vid.* 4 *East*, 582.) Why every other case should have been brought to that test, and this alone form an exception, is not explained, except upon the foundation of precedent. Yet the precedents are not so old as to deny us the power of seeing how they arose ; or that their reason and foundation have been overruled.

These passing away, it is certainly warrantable to dismiss the superstructure with them.

UTICA,
Aug. 1826.

We are accordingly of opinion that the court below decided correctly.

The prisoner was sentenced to the *Auburn* state prison for 10 years.

(*a*) The English doctrine seems to prevail in *Vermont*, (*State* v. *A. W.* 1 *Tyler*, 260,) and *Connecticut*, (*State* v. *Brunson*, 1 *Root*, 307 ; *id.* v. *Howard*, *id.* 308 ; *id.* v. *Blodget*, *id.* 534.)