## UNITED STATES *v.* SEATTLE-FIRST NATIONAL BANK.

No. 267. Argued February 7, 8, 1944.—Decided March 27, 1944.

*Mr. Valentine Brookes,* with whom *Solicitor General Fahy, Assistant Attorney General Samuel O. Clark, Jr.,* and *Messrs. Sewall Key, J. Louis Monarch,* and *Morton K. Rothschild* were on the brief, for the United States.

*Mr. Arnold L. Graves,* with whom *Mr. B. H. Kizer* was on the brief, for respondent.

MR. JUSTICE MURPHY delivered the opinion of the Court.

Respondent initiated this suit to recover the amount of the documentary stamp tax, penalty and interest which had been exacted under the Revenue Act of 1926, as amended, in connection with a statutory consolidation of banks under § 3 of the National Banking Act.[1]  The District Court entered judgment for respondent for the amount of the tax and interest, 44 F. Supp. 603.[2]  The Circuit Court of Appeals held that the case was governed by one of its former decisions[3] and affirmed the judgment, 136 F. 2d 676.  We granted certiorari, 320 U. S. 723, because this judgment was alleged to conflict with decisions in other circuits[4] and because of the desirability of a final settlement of the problems involved.

---

[1] Act of November 7, 1918, c. 209, 40 Stat. 1043, § 3, as added by the Act of February 25, 1927, c. 191, 44 Stat. 1224, § 1, and as amended by the Banking Act of 1933, c. 89, 48 Stat. 162, § 24, and the Banking Act of 1935, c. 614, 49 Stat. 684, § 331; 12 U. S. C. § 34a.

[2] Recovery was denied for the $100 penalty, which was paid in compromise of a threatened criminal prosecution, on the ground that the compromise was a final settlement of the penalty.  This matter is not now before us.

[3] *United States* v. *Merchants National Bank,* 101 F. 2d 399.

[4] See *City Bank Farmers Trust Co.* v. *Hoey,* 125 F. 2d 577; *State Street Trust Co.* v. *Hassett,* 134 F. 2d 156.

In 1935 the directors of the Spokane and Eastern Trust Company, a state bank, entered into a written agreement of consolidation with the directors of the First National Bank of Seattle. The agreement provided that the banks were to be consolidated under the charter of the First National Bank of Seattle and under the new corporate title of Seattle-First National Bank, the respondent herein. The agreement was ratified and confirmed by the requisite number of stockholders of both banks and the Comptroller of the Currency issued the necessary certificate of approval, reciting that the directors and shareholders of both banks had complied with the provisions of the National Banking Act.

The state bank owned real estate, including its banking premises, as well as corporate stocks and bonds, to all of which it held legal and beneficial title as part of its corporate assets. It also held in trust certain stocks and bonds, the legal title to which was vested in it as trustee, executor, administrator, guardian, or in other fiduciary capacities. Section 5 of the consolidation agreement provided that "All assets of each association at the date of consolidation shall pass to and vest in the consolidated association, and the consolidated association shall be responsible for all of the liabilities of every kind and description of each of the consolidating associations."

The transfer to respondent of title to this property held by the state bank was not evidenced by any deed, conveyance, assignment or other instrument. Nor were any documentary stamps purchased or affixed with respect to such transfer. Subsequently, a deputy collector examined the bank records and exacted a tax from respondent on the theory that the consolidation had resulted in a taxable transfer. The necessary stamps were purchased and affixed and this suit for refund followed.

*First.* We conclude that, as to the securities to which the state bank held both legal and beneficial title, there

was no taxable transfer under the stamp tax provisions in effect at the time the consolidation took place.

Section 800, Schedule A–3, of the Revenue Act of 1926, as amended,[5] imposes a stamp tax on transfers of legal title to any shares of stock or certificates, "whether made upon or shown by the books of the corporation or other organization, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale (whether entitling the holder in any manner to the benefit of such share, certificate . . . or not)." Schedule A–9 [6] imposes a stamp tax on similar transfers of legal title to bonds.

Standing alone, these statutory provisions make no exceptions and clearly impose a tax on the transfer of title to the securities legally and beneficially owned by the state bank. But administrative regulations, which until recently have been left undisturbed by subsequently enacted legislation and are to be respected as settled administrative practice,[7] have carved out certain exemptions germane to the transfer here involved. Thus Article 34 (r) of Treasury Regulations 71 (1932 ed.) provides that the transfer of stock owned by a corporation which is merged into another corporation is subject to the stamp tax, "such a transfer being effected by the

---

[5] C. 27, 44 Stat. 9, as amended by § 723 (a) of the Revenue Act of 1932, c. 209, 47 Stat. 169.

[6] C. 27, 44 Stat. 9, as added by § 724 (a) of the Revenue Act of 1932, c. 209, 47 Stat. 169, and as amended by § 212 of the National Industrial Recovery Act, c. 90, 48 Stat. 195, and as amended by Pub. Res. No. 36, c. 333, 49 Stat. 431.

[7] Substantially similar regulations were promulgated under the Revenue Act of 1926 and were in effect when Congress, in the Revenue Act of 1932, reenacted the stamp tax provisions in issue. Congress did not see fit to amend or change these regulations until the Revenue Act of 1942, §§ 506 (b) (1) and (2), c. 619, 56 Stat. 958. See *Helvering* v. *Reynolds Tobacco Co.*, 306 U. S. 110, 115.

act of the parties and not wholly by operation of law." [8] Article 35 (r) specifically exempts from the tax those transfers of shares or certificates of stock "which result wholly by operation of law"; it further states that "transfers of this character are those which the law itself will effect without any voluntary act of the parties, such as transfer of stock from decedent to executor." Article 120 makes these same provisions applicable to sales or transfers of bonds. The problem thus resolves itself into a determination of whether the transfer of the state bank's securities to respondent occurred "wholly by operation of law" so as to exempt the transfer from the stamp tax requirements.

It is clear that the consolidation or merger of the national bank and the state bank occurred through the voluntary acts of the respective directors and stockholders pursuant to the provisions of § 3 of the National Banking Act, with the approval of the Comptroller of the Currency. If the words "wholly by operation of law," as used in the administrative regulations, refer here to the entire process of consolidation, of which the transfer of securities is an essential part, the exemption cannot be applied. But in a broad sense, few if any transfers ever take place "wholly by operation of law," for every transfer must necessarily be a part of a chain of human events, rarely if ever other than voluntary in character. Thus to give any real substance to the exemption, we must take a more narrow view and examine the transfer apart from its general background. We must look only to the immediate mechanism by which the transfer is made ef-

---

[8] While the grammatical construction of the quoted clause gives rise to some doubt as to its meaning, we interpret it in accord with Article 35 (r) so as to impose a tax on transfers arising out of mergers only if the transfer occurs by the act of the parties and not wholly by operation of law.

fective. If that mechanism is entirely statutory, effecting an automatic transfer without any voluntary action by the parties, then the transfer may truly be said to be "wholly by operation of law."

Here the actual transfer to respondent of the legal and beneficial title to the securities owned by the state bank was not effected by or dependent on any of the voluntary acts relating to the consolidation agreement or the ratification or approval thereof. Nor was any voluntary deed, conveyance, assignment or other instrument utilized. Rather the transfer occurred solely and automatically by virtue of § 3 of the National Banking Act. This provides in pertinent part that: (1) upon consolidation, the corporate existence of each of the constituent banks shall be merged and continued in the consolidated national banking association, which shall be deemed to be the same corporation as the constituent banks; (2) all the rights, franchises and interests of each constituent bank in and to every species of property, real, personal and mixed, and choses in action thereto belonging, "shall be deemed to be transferred to and vested in" the consolidated association without any deed or other transfer; (3) the consolidated association, by virtue of such consolidation and without any order or other action by any court or otherwise, shall hold and enjoy the same and all rights of property, franchises and interests (including fiduciary interests) in the same manner and to the same extent as held and enjoyed by the constituent banks.

Thus it is the National Banking Act that is the mechanism by which the transfer of securities is made effective. No voluntary act by the parties is necessary. It follows that the transfer occurred "wholly by operation of law." The mere fact that the parties here saw fit to include in their consolidation agreement a provision that all assets of each constituent bank "shall pass to and vest in the consolidated association" does not make the transfer any

less than one "wholly by operation of law." This was merely an agreement that the assets would be transferred in the future and did not purport to be a present, effective conveyance. The transfer of the securities to which the state bank held legal and beneficial title was therefore exempt from the stamp tax under Articles 34 (r) and 35 (r).

*Second.* We reach the same conclusion as to the transfer of securities to which the state bank held legal title in trust in various fiduciary capacities. The intent to tax such transfers must be clear and unmistakable. No such intent is apparent here. Under § 3 of the National Banking Act, these securities passed to respondent "wholly by operation of law" just as did the securities previously discussed. Articles 34 (r) and 35 (r) make no distinction between transfers of stocks from a fiduciary and transfers from one who is also the beneficial owner. The exemption therein contained is therefore applicable.[9]

*Third.* The transfer of the real property owned by the state bank is likewise, in our opinion, exempt from the stamp tax.

Section 800, Schedule A–8, of the Revenue Act of 1926, as amended,[10] places a stamp tax on "Conveyances: Deed, instrument, or writing, delivered . . . whereby any lands, tenements, or other realty sold shall be granted, assigned, transferred, or otherwise conveyed to, or vested in, the

---

[9] Because of the clear applicability of Articles 34 (r) and 35 (r), we have no occasion to determine the applicability here of Article 35 (h), which exempts from the stamp tax "the transfer of stock from the name of a deceased or resigned trustee to the name of a substituted trustee appointed in accordance with the terms of the original trust agreement, which is a transfer resulting wholly by operation of law."

[10] C. 27, 44 Stat. 9, as added by § 725 of the Revenue Act of 1932, and as amended by § 212 of the National Industrial Recovery Act, and as amended by Pub. Res. No. 36, c. 333, 49 Stat. 431.

purchaser or purchasers . . ." It is clear, however, from § 3 of the National Banking Act that the state bank's realty was not conveyed to or vested in respondent by means of any deed, instrument or writing. There was a complete absence of any of the formal instruments or writings upon which the stamp tax is laid. Nor can the realty be said to have been "sold" or vested in a "purchaser or purchasers" within the ordinary meanings of those terms. Only by straining the realities of the statutory consolidation process can respondent be said to have "bought" or "purchased" the real property. That we are unable to do.

The judgment of the court below is therefore

*Affirmed.*