*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 22-TX-0434

VORNADO 3040 M STREET LLC, APPELLANT,

v.

DISTRICT OF COLUMBIA, APPELLEE.

Appeal from the Superior Court of the
District of Columbia
(2020-CVT-000565)

(Hon. Maurice A. Ross, Trial Judge)

(Argued September 19, 2023                     Decided July 25, 2024)

*William M. Bosch* for appellant.

*Richard S. Love*, Senior Assistant Attorney General, with whom *Karl A. Racine*, Attorney General for the District of Columbia at the time, *Caroline S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, and *Carl J. Schifferle*, Deputy Solicitor General, were on the brief, for appellee.

*Joel N. Simon* filed a brief on behalf of Platt Family Partners, LLC as amicus curiae.

Before BLACKBURNE-RIGSBY, *Chief Judge*, and DEAHL and HOWARD, *Associate Judges*.

HOWARD, *Associate Judge*: "[I]n this world nothing can be said to be certain,

except death and taxes." *Bartholomew v. D.C. Off. of Tax & Revenue*, 78 A.3d 309,

315 (D.C. 2013) (quoting Letter from Benjamin Franklin to Jean Baptiste Leroy (Nov. 13, 1789), in 10 The Writings of Benjamin Franklin 69 (Albert Henry Smyth ed.) (1970)). "Though taxes might be certain, tax laws still require interpretation[.]" *Id.* In this case, we must interpret the result of an attempted restructuring for a tax benefit—specifically, whether transfer and recordation taxes apply to a transfer of real property that resulted from a certificate of merger between two limited liability companies.

In 2006, Vornado 3040 M Street, LLC ("M Street"), a wholly owned subsidiary of Vornado Shenandoah Holdings, LLC ("Vornado"), attempted to purchase a property. To qualify for a tax benefit, M Street arranged for a third party to set up a separate LLC, M Street EAT II, which purchased the property with funds loaned by M Street. Failing to accomplish the tax-advantaged transaction it sought in a timely manner, M Street instructed its agent to assign all interests in EAT II to M Street. EAT II merged into M Street in 2007, and the property vested in M Street under a certificate of merger. In 2019, M Street sold the property. Since M Street had not paid recordation and transfer taxes in 2007, the District of Columbia refused to record the deed. M Street paid roughly $1 million in taxes to complete the sale, sued the District for a refund, and now appeals the Superior Court's grant of summary judgment in the District's favor.

We conclude that the trial court correctly applied the plain text of the Real Estate Deed Recordation Tax Act.  Since the 2007 certificate of merger vested title to real property from EAT II into M Street, the certificate functioned as a deed that transferred "legal title to real property."  *See* D.C. Code § 47-1431(a) (recordation tax definition); *see also id.* § 42-1103(a)(1) (transfer tax definition).  When a deed does so, a party must present the deed to the District and pay transfer and recordation taxes.  *Id.*  The certificate of merger here qualified as a "deed or any document" that transferred title to the property, and M Street was thus subject to transfer and recordation taxes.  *See id.* § 47-901(3) (transfer tax definition of "deed"); *id.* § 42-1101(3)(A) (recordation tax definition).

M Street relies on two statutes that we conclude do not apply.  While M Street argues that regulations under the Recordation of Economic Interests Act of 1989 (REI Act) exempt certain transfers of economic interest in real property, EAT II and M Street transferred real property.  And while M Street argues that the District of Columbia's Business Organizations Code exempts the transfer, the transfer happened under Delaware law.  We therefore affirm the decision of the trial court.

# I.     Background[1]

In March 2006, M Street, a wholly owned subsidiary of Vornado, sought to purchase property at 3040 M Street N.W., Washington, D.C.   Three ownership changes of the property resulted, one of which led to the taxed transaction at issue in this appeal.

## A.     The 2006 Purchase

To complete the purchase, M Street set up a reverse like-kind exchange under § 1031 of the Internal Revenue Code.[2]  In a reverse like-kind exchange, no gain or loss is recognized if a taxpayer (1) receives a property held for business or investment purposes and (2) within 180 days, identifies a "replacement property" to be purchased and sells the received property as the "relinquished property."  *See* 26 U.S.C. §§ 1031(a)(1), (3).  A separate party from the taxpayer called an exchange accommodation titleholder holds the replacement property until the relinquished

---

[1] Since no trial or fact-finding occurred, these facts come from appellant M Street's petition and motion for judgment on the pleadings.

[2] This is a type of transaction yielding a tax benefit.  If a taxpayer receives property held for business or investment purposes and then exchanges that property for "real property of like kind" in 180 days, "no gain or loss shall be recognized." 26 U.S.C. §§ 1031(a)(1), (3).

property is sold. Then the accommodation titleholder transfers the replacement property back to the taxpayer.

Here, M Street arranged for a third party to form two LLCs to serve as accommodation titleholders: M Street EAT and M Street EAT II. Vornado and M Street EAT then entered into a Qualified Exchange Accommodation Agreement. EAT would serve as the accommodation titleholder; EAT II would acquire the property as a replacement property; and Vornado would dispose of a relinquished property.

The property's seller and M Street signed a purchase agreement for the property. In the purchase agreement, M Street assigned all of its rights in the property to EAT II, which acquired the property. The seller and EAT II submitted a deed to the Recorder of Deeds, part of the District's Office of Tax and Revenue (OTR). The deed indicated that the exchange of property was the first of two transfers in connection with a tax-deferred exchange, and transfer and recordation taxes were paid on the purchase.

## B. The 2007 Certificate of Merger

Six months after EAT II's acquisition, the property remained with EAT II. Vornado had not sold any property to be relinquished, so no reverse like-kind

exchange occurred. M Street directed EAT to assign all membership interests in EAT II to M Street. Over a year later, in November 2007, EAT II merged with M Street so that M Street could "eliminate the extraneous entity in its organizational structure." M Street did not submit a deed for recording.

## C. The 2019 Sale

Twelve years after the acquisition, in September 2019, M Street sold the property to a third party. M Street paid transfer and recordation taxes, and then presented a deed to be recorded. But District of Columbia land records still showed EAT II as the owner of the property. So the Recorder of Deeds would not record the deed unless M Street paid recordation and transfer taxes on its 2007 acquisition of the property via the merger.

This was because, according to the Recorder, the transaction was still taxable despite the transfer of property following a certificate of merger. "Even though the title passes from the merged corporation to the surviving corporation by operation of the law governing mergers, the transfer is taxable under *Columbia Realty Venture v. District of Columbia*, 433 A.2d 1075 (D.C. 1981), because ownership is passing from one legal entity to another," the Recorder explained in an email to M Street. And the Recorder said that three decisions from the District of Columbia courts, as

well as 9 D.C.M.R. § 502.1a, deemed "an instrument reflecting the vesting of title in the surviving entity" after a merger as "taxable."

M Street paid $1,008,168 in taxes under protest. In December 2019, M Street filed suit to seek a refund of the transfer and recordation taxes.

### D.     Procedural history

The trial court dismissed M Street's initial suit, requiring M Street to exhaust its administrative remedies by filing a refund request with the Recorder of Deeds. M Street filed its request, received no response after six months, and then filed the present suit in December 2020. The District filed a motion to dismiss, which the trial court denied because it could not conclude M Street's claims were "speculative." M Street then moved for judgment on the pleadings and the District filed a cross-motion for summary judgment.

The trial court found that the certificate of merger triggered transfer and recordation taxes. The court reasoned that a deed under the Deed Recordation Tax Act includes "any document" that transfers or "*vest[s]*" real property in the District (emphasis in original). Both EAT II and M Street were Delaware limited liability companies that merged under Delaware law, which states that property from a merged entity is vested into a surviving entity. So the trial court reasoned that the

2007 certificate of merger fell "squarely into the statutory definition of 'deed'" under District of Columbia law.

In turn, the court rejected two arguments from M Street.[3] One concerned D.C. Code § 29-202.06(3), a provision under the Business Organizations Code of the District of Columbia that vests title to property after a merger "without transfer." But the court reasoned that the acquisition happened under Delaware law, and Delaware law provided no such exception. Nor, as M Street argued, was the transfer of the property a transfer of a controlling interest that this court's precedents, the REI Act, or District of Columbia Municipal Regulations exempted from taxation. After all, EAT II remained a "distinct legal entity" from M Street until the merger, and no controlling interest had transferred "short of transferring full title from one entity to another."

The trial court granted the District's motion for summary judgment, denied M Street's motion for judgment on the pleadings, and dismissed M Street's petition

---

[3] The trial court dismissed two other arguments that are not at issue in this appeal. First, D.C.'s Entity Transactions Act states that recordation and transfer taxes do not apply upon a conversion, but the court noted EAT II merged—rather than converted—into M Street. Second, the court found that the 2007 acquisition did not fall under a six-year statute of limitations under D.C. Code § 47-4301(d)(3) since M Street never filed a tax return on the 2007 acquisition.

for a refund of its transfer and recordation taxes in connection with the 2007 certificate of merger.

This appeal followed.

## II.    Standard of Review

This court reviews summary judgment rulings de novo, conducting an "independent review of the record" to consider whether summary judgment was "properly granted." *MEPT St. Matthews, LLC v. District of Columbia*, 297 A.3d 1094, 1097 (D.C. 2023) ("*MEPT*") (quoting *Expedia, Inc. v. District of Columbia*, 120 A.3d 623, 630 (D.C. 2015)).  Cases from the tax division of the Superior Court "are reviewable in the same manner as other decisions of the court in civil cases tried without a jury," and summary judgment principles apply "equally" in tax cases. D.C. Code § 47-3304(a); *see Aziken v. District of Columbia*, 194 A.3d 31, 34 (D.C. 2018) (citing *Square 345 Ltd. P'ship v. District of Columbia*, 927 A.2d 1020, 1023-24 (D.C. 2007)).

De novo review applies to issues of statutory construction as well, but we give "deference to the reasonable interpretation of the agency charged with implementing the statute." *Bartholomew*, 78 A.3d at 316.  Otherwise, traditional principles of statutory construction apply to tax statutes. *MEPT*, 297 A.3d at 1097 (citation

omitted). "[I]nterpreting tax laws is a three-step process: [we look first to the plain meaning, and,] if the court is confronted with ambiguity on the face of the statute, step two is to turn to the legislative history and the other tools of reasonable statutory construction, and—if the ambiguity persists—step three is to construe the statute strictly against the state and in favor of the taxpayer." *Id.* (quoting *Expedia, Inc.*, 120 A.3d at 631).

### III. Discussion

We conclude that the trial court correctly held that M Street must pay transfer and recordation taxes: under the Deed Recordation Tax Act, the 2007 certificate of merger qualified as a "deed or any document" that transferred real property from EAT II to M Street. *See* D.C. Code § 47-901(3) (transfer tax); *see also id.* § 42-1101(3)(A) (recordation tax). M Street argues that the property transfer was a transfer of an economic interest exempt from transfer and recordation taxes under the REI Act, yet the transfer was a transfer of real property. And since those entities merged under Delaware law, the exemption M Street seeks under the Business Organizations Code does not apply here. The trial court thus correctly concluded that M Street was subject to transfer and recordation taxes after the 2007 certificate of merger.

## A.      Real Estate Deed Recordation Tax Act

The 2007 certificate of merger effected the transfer of the property from EAT II to M Street, and therefore qualified as a deed under the Real Estate Deed Recordation Tax Act.  We explain why this reading of the Act satisfies its plain text and legislative history and was a reasonable agency interpretation.

### 1.      Plain text and legislative history

The plain text and legislative history of the Act emphasize not the form of the deed, but the act of conveyance.  We arrive at this conclusion based on the text of the statutory scheme, application of that scheme, and legislative history underpinning that scheme.

#### a.      Statutory framework

This court has applied the District's transfer and recordation tax statutes "broadly" to "any instrument used to convey 'any real property in the District, *or any interest therein.*'"  *MEPT*, 297 A.3d at 1099 (quoting *District of Columbia v. Design Ctr. Owner (D.C.) LLC*, 286 A.3d 1010, 1023 (D.C. 2022) ("*Design Center*") (citing D.C. Code § 47-901(3))).  These statutes operate as follows.

Whenever parties execute a "deed or other document" that transfers "legal title" or an "economic interest" in real property, all transferees and all holders of a

security interest must record the deed or other document within thirty days. D.C. Code § 47-1431(a). "That act—submitting a deed for recordation—is what triggers the assessment of [transfer and recordation taxes], which are typically calculated as a percentage of the consideration paid for the transfer."[4] *Design Center*, 286 A.3d at 1021 (citing D.C. Code § 42-1103(a)(1) (recordation tax); *id.* § 47-903(a)(1) (transfer tax)).

The word "deed" means "any document, instrument, or writing . . . regardless of where made, executed, or delivered" that "convey[s], vest[s], grant[s], bargain[s], sell[s], transfer[s], or assign[s]" "any real property in the District, or any interest therein[.]" D.C. Code § 47-901(3) (transfer tax); *see also id.* § 42-1101(3)(A) (defining, for the recordation tax, a "deed" as "any document, instrument, or writing . . . wherever made, executed, or delivered, pursuant to which: (i) Title to real property is conveyed, vested, granted, bargained, sold, transferred, or assigned; (ii) An interest in real property (including an estate for life) is conveyed, vested, granted, bargained, sold, transferred, or assigned; . . . or (iv) A transfer of an economic interest in real property is evidenced pursuant to § 42-1102.02").

---

[4] "In the event that either no or nominal consideration is paid for the transfer, the taxes are assessed as a percentage of the fair market value of the property." *Design Center*, 286 A.3d at 1022 n.7 (citing D.C. Code §§ 42-1103(a)(1)(A), 47-903(a)(1)(B)).

District law presumes that "all transfers of real property are taxable" and "required to be recorded," and the taxpayer bears the burden of proving that an exemption applies. D.C. Code §§ 47-907 (transfer presumption), 47-1432 (recordation presumption).

### b. Application of statutory scheme

Under the plain text of the transfer and recordation statutes, the 2007 certificate of merger qualified as a "deed," which triggered transfer and recordation taxes when the transfer occurred by requiring a deed to be presented after a transfer.

In late 2006, EAT transferred to M Street all interest in EAT II—but the property itself remained with EAT II. In 2007, when M Street and EAT II merged, the property that belonged to the merged entity EAT II "vested into the surviving or resulting limited liability company" M Street. The 2007 certificate of merger thus served as the "document, instrument, or writing" that transferred the property to M Street. *See* D.C. Code § 47-901(3) (transfer tax definition of "deed"); *id.* § 42-1101(3)(A) (recordation tax definition of "deed"). In other words, the certificate of merger documented the merger, which transferred the property to M Street; that transfer triggered both the recording requirement and transfer and recordation taxes. *See id.* § 42-1103(a)(1) (recordation tax requirement); *id.* § 47-903(a)(1) (transfer tax requirement).

Yet, M Street contends, what triggers recordation and transfer taxes is the submission of a deed for recordation—and, here, since the certificate of merger conveyed property by "operation of law" and not by deed, there was no tax-triggering event. As the District points out, that argument overlooks D.C. Code § 47-1431(a), which requires that all transferees of real property must record any document that conveys title to real property within thirty days of a document's execution. This requirement in District of Columbia law has long served to protect property interests against subsequent bona fide purchasers, provide notice to third parties, and "facilitate the collection of various taxes." *Rose v. Wells Fargo Bank, N.A.*, 73 A.3d 1047, 1052 (D.C. 2013) (explaining history of the District's recordation statute). A transferee must submit a deed when a document conveys title, whether via deed or by operation of law. We agree with the District that OTR thus appropriately taxed M Street for not doing so.

### c. Legislative history

Even if we concluded that plain text "confronted [us] with an ambiguous statutory provision," the "language of surrounding and related paragraphs and the legislative scheme as a whole" of the Deed Recordation Tax Act further supports finding the certificate of merger qualified as a deed. *See Unum Life Ins. Co. of Am. v. District of Columbia*, 238 A.3d 222, 230 (D.C. 2020) (citations omitted).

From the earliest drafts of what would become the Real Estate Deed Recordation Tax Act, Congress defined "deed" expansively. It did so as part of a legislative scheme to generate tax revenue for the District of Columbia. *See* District of Columbia Sales Tax Act, H.R. 10346, 86th Cong. (1960) (stating purpose); H.R. Rep. No. 87-1267, at 12 (1961) (summarizing a Senate amendment that proposed an "entirely new tax . . . upon deeds submitted . . . for recordation" that was a "method of raising revenue which in various forms is in common usage in the States"). When Congress passed the Act, it maintained that expansive definition to include any document that conveyed real property in the District of Columbia. *See* H.R. Rep. 87-1328, at 2 (1962) (defining deed to mean "any document, instrument, or writing (other than a will and other than a lease), *regardless of where made, executed, or delivered whereby any real property in the District of Columbia, or any interest therein, is conveyed, vested, granted, bargained, sold, transferred, or assigned*" (emphasis added)).

In subsequent revisions to the Act, the Council of the District of Columbia maintained a similar definition. *See* District of Columbia Revenue Act of 1980, D.C. Council, Report on Bill 3-285, at 39 (June 12, 1980); District of Columbia Revenue Act of 1980, D.C. Law 3-92, 1979-1980, D.C. Stat. 400 (Sept. 13, 1980); *see also* Tax Clarity Act of 2001, D.C. Law 13-305, § 505(a), 48 D.C. Reg. 334 (June 9, 2001) (maintaining similar definition). To that end, the legislative history confirms

what the plain text shows: a deed may include any document that effects a transfer of real property. The 2007 certificate of merger was such a document.

### 2. *Columbia Realty*, *Cowan*, and OTR's interpretation

Our conclusion that the 2007 certificate of merger functioned as a deed finds further support from OTR's reasonable interpretation of two decisions of this court and its own regulations.

### a. Case law

Two of our cases have already established that transfer and recordation taxes apply upon a transfer of property from one legal entity to another.

In *Columbia Realty Venture v. District of Columbia*, this court deemed a "conveyance or transfer of real property for consideration between distinct legal entities" as "exactly the type of property transaction to which the recordation tax is intended to apply." 433 A.2d 1076, 1077, 1080 (D.C. 1981). A trust transferred twelve deeds to a partnership whose interest holders were "essentially the same people" as the shareholders of the trust. *Id.* at 1077-78. This court upheld the deed recordation tax because the transfer of the deeds "reflect[ed] a conveyance of property from one entity to another," and there was a "complete change" of ownership. *Id.* at 1076. We concluded that hinging the deed recordation tax on

"whether a property transfer involves a change of ownership or only of business form" would "distract[] from recognizing the fundamental transaction of one business entity conveying property to another." *Id.* at 1078.

We affirmed that conclusion in *Cowan v. District of Columbia Department of Finance and Revenue*, 454 A.2d 814 (D.C. 1983) (per curiam). There, we upheld recordation taxes where an appellant received a property as the sole remaining member of a partnership that had previously held the property. *Id.* at 815. Since the appellant obtained a property that was subject to recordation tax by "operation of law," the appellant argued that he effectively held the property before and after the partnership dissolved. *Id.* While the appellant was the same on both sides of the transaction, similar to Vornado, the transfer of a deed between the partnership and a member of the partnership effected a "complete change in the legal ownership of the property." *Id.* Even though the appellant had paid no consideration for the property he received, the lack of consideration did "not negate the fact that a transfer had occurred between two legal entities."[5] *Id.* at 815 n.1. "[A]s we emphasized in

---

[5] This reasoning also explains why M Street may not seek exemption under a provision that exempts from tax "[t]ransfers which, without additional consideration, confirm, correct, modify, or supplement a transfer previously recorded[.]" *See* D.C. Code § 47-902(8). Here, like in *Cowan*, "consideration is not required." *See* 454

*Columbia Realty Venture*, this is 'the exact event for which the tax is imposed.'" *Id.* at 815 (quoting 433 A.2d at 1076).

Courts have declined to recast such transfers of real property due in part to the nature of the benefit a taxpayer receives. In *Dean v. Pinder*, the Maryland Court of Appeals upheld transfer and recordation taxes on a transfer of real property from two individuals to their wholly-owned corporation. 538 A.2d 1184, 1190 (Md. 1988). The transfer was a "complete change of the lawful ownership" of the property since the transfer conveyed a "real economic benefit" that amounted to consideration. *Id.* Case in point, the transfer "undeniably increased the assets of the corporation" and gave the petitioners the "benefit of limited liability" for their properties. *Id.*; *see also Bjurback v. Comm'r of Revenue Servs.*, 690 A.2d 902, 903-05 (Conn. Super. Ct. 1996) (applying *Dean*). *But see Mandell v. Gavin*, 816 A.2d 619 (Conn. 2003)

---

A.2d at 815 n.1. When a transfer occurs without consideration, some jurisdictions do not apply transfer taxes, but the District of Columbia does. *Compare* MD TAX PROPERTY § 12-108(p)(2)(i) (exception where the parent entity is the original owner of the subsidiary business entity), MD TAX PROPERTY § 12-108(bb) (providing an exception if the company that owned the property before the transfer is considered a "real estate enterprise"), *and* VA Code Ann. § 58.1-811(A)(8) (exception for two entities that merged or reorganized), *with* D.C. Code §§ 42-1103(a)(1)(A), 47-903(a)(1)(B) (assessing taxes as "a percentage of the fair market value of the property" for transactions with no consideration).

(finding no consideration exchanged, and thus no grounds to subject to state real estate conveyance tax, where a taxpayer transferred property to an LLC of which he was the sole member).[6]

To draw that conclusion, the *Dean* court relied in part on our decision in *Columbia Realty*. *Id.* There, the trustees and partners had "elected to deal with the property involved in this case through unique and specific business enterprises" that "generate[d] various advantages for the individual participants, including limited personal liability." 433 A.2d at 1078. "Having structured their business affairs in such a manner, the participants must operate consistently and not seek treatment as individuals when that would better suit their interests in a particular setting." *Id.*

So too here. M Street structured the purchase of the property through EAT II, a separate LLC, as part of a reverse like-kind exchange—essentially, for a tax

---

[6] Courts in some states have not imposed transfer and recordation taxes when the transferor of the property owned a transferee corporation, but such courts have usually applied state-specific statutory exemptions. *See Senfour Investment Co. v. King County*, 401 P.2d 319 (Wash. 1965) (declining to impose a transfer tax where trustees accepted title before transferring a property to a corporation because the conveyance of title did not meet the statutory definition of a sale for valuable consideration); *Wetherbee v. State*, 315 A.2d 251 (Vt. 1974) (rejecting transfer taxes on a husband and wife's transfers of deeds to and from their corporation because the transfers were the "same character" as a tax-exempt security transaction between the corporation and a bank).

benefit. *Columbia Realty* and *Cowan* show that a "transfer is all that the recordation [and transfer] tax statute[s] requir[e]." *Cowan*, 454 A.2d at 815 n.1.

#### b.    OTR's interpretation

This court's holdings in *Columbia Realty* and *Cowan*, along with OTR's rulemaking in § 502.1a and other regulations, supported OTR's "reasonable interpretation" of the transfer and recordation tax statutes when it concluded that M Street owed transfer and recordation taxes on the transfer of real property that followed the 2007 certificate of merger. *See MEPT*, 297 A.3d at 1097 (standard for agency deference in statutory interpretation).[7]

If nothing else, OTR made clear that these regulations flowed from this court's rulings. In 2014, OTR proposed rulemaking to "clarif[y] or restat[e]" provisions of regulations "in light of court rulings, such as *Columbia Realty Venture v. District of*

---

[7] We reserve judgment on any potential impact of *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), on our "well established . . . deference to an agency's interpretation of [a relevant] statute and regulations," *D.C. Dep't of Env't v. E. Capitol Exxon*, 64 A.3d 878, 880-81 (D.C. 2013) (internal quotation marks and citations omitted). This case was argued before *Loper Bright* was decided, and neither party has suggested that this case might affect our deference to agencies.

*Columbia*, 433 A.2d 1075 (D.C. 1981).” 61 D.C. Reg. 4717 (May 9, 2014) (Notice of Final Rulemaking);[8] *see also* 61 D.C. Reg. 1314 (Feb. 14, 2014) (Notice of Proposed Rulemaking).[9]  The new regulations applied the Deed Recordation Tax Act “to deeds reflecting the transfer of property or an interest in property from one person to another, whether the transfer occurs by conveyance or operation of law, including a transfer resulting from a merger, consolidation, liquidation or reorganization.”[10]  *See* 9 D.C.M.R. § 502.1a.  This explains why OTR concluded reasonably that, like the transfer from a trust to a partnership in *Columbia Realty* and the transfer from an appellant’s partnership to the appellant himself in *Cowan*, the

---

[8]    A    copy    of    this    regulation    is    accessible    at https://dcregs.dc.gov/Common/NoticeDetail.aspx?NoticeId=N0047665; https://perma.cc/TYB2-EHVR.

[9]    A    copy    of    this    regulation    is    accessible    at https://dcregs.dc.gov/Common/NoticeDetail.aspx?NoticeId=N0046486; https://perma.cc/7F22-VP4R.

[10] M Street contends that 9 D.C.M.R. § 502.1a has an “uncertain” genesis and lacks support from text of the Deed Recordation Tax Act or the REI Act.  But Section 502.1a was part of the 2014 rulemaking done in part to apply *Columbia Realty*.  *See* 61 D.C. Reg. at 4717.

transfer from EAT II to M Street concerned "ownership . . . passing from one legal entity to another."

On appeal, M Street disputes analogies to *Columbia Realty* and *Cowan*, but the transfer of property here reflects the facts of both cases. M Street argues that *Columbia Realty* did not consider facts like a merger where title to real property "pass[ed] from one owner to another by operation of law." Nor did *Columbia Realty* and *Cowan* contemplate the merger of a "wholly-owned subsidiary" into a "parent entity that already owned all its assets." But OTR reasoned that, like the taxpayer in *Cowan* who still owed taxes after receiving property when a partnership dissolved (*i.e.*, by "operation of law"), M Street had received a "transfer of property between different entities incident to [a] reorganization transactio[n]."[11] This, OTR

---

[11] We disagree with M Street and amicus curiae Platt Family Partners LLC that a transfer that occurs by operation of law is "entirely statutory" and thus results in a non-taxable "automatic transfer." The cases cited for this proposition involved different circumstances than the present case.

In *United States v. Seattle First*, two banks consolidated and a federal stamp tax was assessed on a transfer of one bank's real property. 321 U.S. 583, 585-86 (1944). "[B]ecause the substance of the transfer did not involve the purchase or sale of property," the U.S. Supreme Court exempted the transfer of real property from the tax. *See 926 N. Ardmore Ave., LLC v. Cnty. of Los Angeles*, 396 P.3d 1036, 1046 (2017) (discussing *Seattle First*, 321 U.S. at 589-90). But the Supreme Court of California rejected an analogy to *Seattle First* in a recent case that concerned whether

concluded, was taxable. Based on OTR's interpretation of the statute, *Columbia Realty*, and *Cowan*, OTR reached a reasonable conclusion that the "taxation of transfers resulting from reorganizations has been established since the early days of the tax," and that such taxation applied here. *Id.*

\* \* \*

To sum up, we apply the "general proposition that each separate interest transferred is taxable, regardless of how a real estate deal is structured or how the transfer is effected." *See MEPT*, 297 A.3d at 1099. Applying that proposition reflects the "actual nature of the property exchange conducted." *See Columbia Realty*, 433 A.2d at 1080. In *Columbia Realty*, "[s]imply because the enterprise conveying the property the Trust dissolved, and the grantee the Venture remained, and the participants in both business enterprises were similar, the original exchange [wa]s not recast into something other than a property transfer between two separate

---

a real property transfer between two LLCs was taxable. *See id.* The court noted that the U.S. Supreme Court's holding applied specifically to the Stamp Tax Act. *Id.*

    *Commonwealth v. Willson Products, Inc.*, 194 A.2d 162 (Pa. 1963) and *Commonwealth v. Passell*, 223 A.2d 24 (Pa. 1966) deemed transfers of real property to be not taxable following a merger and a corporate liquidation, respectively. But those cases—decided approximately sixty years ago—did so under statutory provisions unlike those of the Deed Recordation Tax Act. *See Willson Products*, 194 A.2d at 164-67; *Passell*, 223 A.2d at 28-29.

business entities." *Id.* While M Street held all interests in EAT II prior to the 2007 certificate of merger, which dissolved EAT II, we similarly decline to recast the nature of the transfer of real property here. Our conclusion reflects the actual nature of the exchange: a transfer of real property between two distinct legal entities.

### B. Recordation of Economic Interests Act

M Street also contends that it may be exempt under a number of regulations implementing the REI Act. It cites regulations that exempt a transfer of a controlling interest in an entity when the "ultimate ownership interest" does not change, when a "change of identity" occurs, or when there is a transfer to a parent "in complete liquidation of a wholly owned subsidiary" subject to the Act. *See* 9 D.C.M.R. §§ 523.1, 523.3, 520.2. It argues that the trial court failed to consider the property transfer as a transfer of a controlling interest under that Act. Since the transfer at issue involved real property, we disagree. Our conclusion stems from the purpose of the REI Act and its implementing regulations that M Street relies on.

Like the trial court, we conclude that "the purpose of [the REI] Act was to close a tax loophole." The REI Act imposes a recordation tax on transfers of economic interests when those transfers represent a transfer of a controlling interest in an entity that owns real property. *See* D.C. Code § 42-1102.02. The Council of the District of Columbia drafted the REI Act to expand the definition of a "deed" to

include "transfers of economic interests." *See* District of Columbia Recordation of Economic Interests in Real Property Tax Amendment Act of 1989, D.C. Council, Report on Bill 8-169 at 2 (Apr. 27, 1989). This functioned as a response to some business entities "whose primary assets [we]re District real property" that "avoid[ed] paying the District's deed recordation and transfer taxes by transferring the ownership interests in the entities rather than the real property itself." *Id.* at 4. We agree with the trial court that we should consider the implementing regulations of the REI Act in light of its intended purpose to expand the recordation tax.

That purpose bolsters our conclusion that the REI Act does not apply here. As the trial court correctly concluded, "[t]ransfers of economic interests are different from transfers of actual title to a piece of real property." The merger of EAT II into M Street transferred real property, not a mere economic interest in an entity owning real property. To illustrate the point by way of contrast, EAT's 2006 transfer of interest in EAT II to M Street did not change the ultimate ownership and was indeed a transfer of an economic interest—the property itself remained with EAT II immediately after that transfer (and, accordingly, the District has not sought to tax that presumptively exempt transfer). Likewise, if Vornado dissolved M Street, transferring all economic interest in EAT II to Vornado, this would have been a transfer of economic interest that was presumptively exempt under the REI Act as

well. However, since a transfer of real property occurred, these regulations do not apply.

And, in any event, another regulation under the REI Act makes clear that these exemptions apply only when the REI Act and no other tax law applies—which is not the case here. *See* 9 D.C.M.R. § 523.4 ("The exclusion of a transfer from recordation under the Recordation of Economic Interests Act shall not prevent the same transfer from being subject to taxation under any other Act or rule of law."). In short, the transfer at issue in this case was not subject to the REI Act—and M Street cannot take advantage of these regulations.[12]

## C. Business Organizations Code

Finally, we agree with the trial court's rejection of M Street's argument that the trial court erred by not applying a District of Columbia merger law that vests property of a merging entity in a surviving entity "without transfer." For similar

---

[12] In fact, OTR "clarified" a number of REI Act regulations in 2014 "in light of" the basic principle of *Columbia Realty* and *Cowan*—that is, when a deed (defined as "any document," as discussed above) effects a "complete change in legal ownership of the property," a taxable event follows. *See* 61 D.C. Reg. at 4717; *Cowan*, 454 A.2d at 815. Since the REI Act does not apply, we need not consider whether OTR has proffered a reasonable interpretation. *See In re Bright Ideas Co., Inc.*, 284 A.3d 1037, 1049 (D.C. 2022) (articulating standard).

reasons, we reject M Street's argument that the law raises concerns under the Equal Protection Clause.

### 1. Merger law

Those merger laws—contrary to M Street's argument—only govern mergers under District of Columbia law. D.C. Code § 29-202.06, a provision under the Business Organizations Code, reads: "(a) When a merger *under this chapter* becomes effective: . . . (6) If the surviving entity exists before the merger: (A) All of its property shall continue to be vested in it *without transfer*, reversion, or impairment; . . . " (emphases added). Since an entity's laws of incorporation govern its internal affairs, *see* D.C. Code § 29-105.01(a), two LLCs that merged under Delaware law cannot now take advantage of the District's merger statutes. EAT II and M Street merged not under this chapter, but under Delaware law. We make no finding as to whether Section 29-202.06 exempts a taxpayer from taxes under the transfer and recordation tax codes: no such finding is necessary because the merger here did not happen under this chapter.

The trial court summed up why. An entity "cannot have the luxury of choosing which jurisdiction to be incorporated in, receive the benefits of its business organization laws, and then elect to be governed by a different, more beneficial jurisdiction when taxes are to be paid." To the extent Section 29-202.06(6)(A)

provided the tax benefit M Street sought, M Street could have chosen to incorporate EAT II and itself in the District of Columbia to receive that tax benefit.  It did not.

### 2.      Equal Protection Clause

We also disagree with M Street that the trial court raised constitutional concerns when it declined to exempt M Street from the transfer tax.[13]  To claim the 2007 merger was not a taxable transfer, M Street argued that the District of Columbia Business Organizations Code vests title to property from a merging entity in a surviving entity "without transfer."  *See* D.C. Code § 29-202.06(a)(6)(A).  But an entity's laws of incorporation govern its internal affairs, *see* D.C. Code § 29-105.01(a), which include mergers.  Since M Street and EAT II were both incorporated in Delaware, the trial court concluded that M Street could not take advantage of a potential tax exemption from the District of Columbia's business organization laws.  On appeal, M Street has not shown that the trial court's ruling

---

[13] In its reply brief, M Street raises an additional concern that District of Columbia merger laws raise "dormant Commerce Clause issues (*i.e.*, taxing non-District entities more heavily than District-incorporated entities)."  We do not address this argument, however, since this court has a "longstanding policy" against "consider[ing] arguments raised for the first time in a reply brief."  *Holbrook v. District of Columbia*, 259 A.3d 78, 86 n.2 (D.C. 2021).

raises concerns under the Equal Protection Clause.  *See* U.S. Const. amend. XIV, § 1.

Under the Equal Protection Clause, unless a fundamental right or suspect class is at issue, "[e]conomic legislation involving taxation will be upheld under the rationality test where the justification is merely legitimate." *Midan Ltd. P'ship v. District of Columbia*, 692 A.2d 1340, 1341 (D.C. 1997) (per curiam) (quoting *Konecny v. D.C. Dep't of Emp. Servs.*, 447 A.2d 31, 37 n. 6 (D.C.1982)). "The party challenging the constitutionality of [a rational basis classification] must make a clear showing of arbitrariness and irrationality, and must negate every conceivable basis which might support it." *Frazier v. D.C. Dep't of Emp. Servs.*, 229 A.3d 131, 141 (D.C. 2020) (quoting *Tucker v. United States*, 708 A.2d 645, 647 (D.C. 1998)); *see also, e.g.*, *Nordlinger v. Hahn*, 505 U.S. 1 (1992) (upholding California property tax scheme based on the date of acquisition due to legitimate rationales of "local neighborhood preservation" and reliance interests of existing owners); *Armour v. City of Indianapolis*, 566 U.S. 673 (2012) (upholding city plan that forgave property owners with outstanding installment plan payments but did not refund owners who paid in lump sum due to reduction of administrative costs).

To prevail, M Street would have to make a "clear showing of arbitrariness or irrationality," *Frazier*, 229 A.3d at 141, in the application of the principle that an

entity's laws of incorporation govern its internal affairs. But it has not. M Street's briefing simply cited two U.S. Supreme Court cases with arbitrary classifications. In *WHYY, Inc. v. Borough of Glassboro*, the U.S. Supreme Court rejected a New Jersey property tax exemption scheme that denied a tax exemption to an out-of-state nonprofit "solely because of the appellant's foreign incorporation" and not because of its "failure or inability to benefit the State in the same measure as do domestic nonprofit corporations." 393 U.S. 117, 119-20 (1968). In *Allegheny Pittsburgh Coal Company v. County Commissioner of Webster County*, 488 U.S. 336, 341, 345-46 (1989), the Court rejected a county's practice of determining the value of recently purchased properties based on their purchase price. Because the practice led to a "systematic undervaluation" of property of the same class—including a company whose property was taxed at a rate thirty-five times that of some of its neighbors—the practice lacked a purpose that could "reasonably have been the purpose and policy" of a governmental decision-maker. *Id.* at 345-46. While the plaintiffs in *WHYY, Inc.* and *Allegheny Pittsburgh* pointed to arbitrary treatment compared to similarly situated taxpayers, M Street gives no examples of similarly situated taxpayers on which the District did not impose transfer taxes.

Nor has M Street made a clear showing of why it was arbitrary or irrational to apply the internal affairs doctrine, which covers mergers. *See* Restatement (Second) of Conflict of Laws § 302, comment *e* (explaining that internal affairs include

"mergers, consolidations, and re-organizations"). That doctrine, a conflict of laws principle, has long recognized that "only one State should have the authority to regulate a corporation's internal affairs" to avoid facing an organization with "competing demands." *Edgar v. MITE Corp.*, 457 U.S. 624, 625 (1982) (citation omitted); *see also Eccles v. Shamrock Capital Advisors, LLC*, No. 49, 2024 WL 2331737, at \*5 (N.Y. May 23, 2024) (discussing reasoning for internal affairs doctrine). M Street and EAT II were Delaware limited liability companies that merged under Delaware law. It was not arbitrary or irrational to conclude that M Street could not benefit from an exemption for District of Columbia companies merging under District of Columbia law.

To emphasize, the scenario here just does not function as M Street posits. The corporate law of the District was not created to single out foreign incorporated entities; it was created to govern the function of District of Columbia business entities and to entice businesses to the District. The government has not singled out M Street or applied the law arbitrarily. M Street made a decision and classified itself. M Street opted for the law of Delaware in incorporating there and that choice of law was applied to the effect of its merger. Were the trial court to analyze this case in the same manner in a situation where M Street organized under the laws of a hypothetical foreign jurisdiction with a law similar to the District's, M Street would be entitled to receive the benefit of those laws. M Street cannot pick and choose

which benefits and demerits it receives in each plausible scenario under the law of different jurisdictions after choosing the law of one.

## IV.    Conclusion

When a taxpayer structures itself to seek a tax benefit, it assumes some risk. A court may not absolve a taxpayer of risk at the expense of other taxpayers, and we decline to do so here.

For the reasons above, we affirm the decision of the trial court.

*So ordered.*